In re PRECISION AUTOCRAFT, INC., Debtor.

In re SEDRO–WOOLLEY LUMBER CO., WTD Industries, Inc., Treesource, Inc., et al., Debtors.

Bankruptcy Nos. 95–8483, 91–00707 to 91–00721, 91–00736 to 91–00741, 91–00752 to 91–00756, 91–00773 to 91–00778 and 91–01140 to 91–01149.

United States Bankruptcy Court, W.D. Washington.

June 27, 1996.

, James L. Day, Bush Strout & Kornfeld, Seattle, WA, for Precision Autocraft, Inc.

Edward R. Kandler, Assistant U.S. Trustee, Jan S. Ostrovsky, U.S. Trustee, Region 18, Seattle, WA, for U.S. Trustee.

Kurt Becker, Perkins Coie, Seattle, WA, for WTD Industries, Inc.

## MEMORANDUM OPINION

KAREN A. OVERSTREET and SAMUEL J. STEINER, Bankruptcy Judges:

This matter came before the Court on the motions of Precision Autocraft, Inc. ("Precision") and WTD Industries, Inc. ("WTD") for final decrees. The United States Trustee ("UST") objected in both cases, on the ground that Precision and WTD (collectively, the "Debtors") owed quarterly fees to the UST under 28 U.S.C. § 1930(a)(6), as amended by § 211 of the Balanced Budget Downpayment Act, I, Pub.L. No. 104–99, 110 Stat. 26, 37–38 (1996) ("Act" or "Amendment"), which extended the UST's quarterly fee to debtors with confirmed plans. The Court must determine whether the Debtors are liable for quarterly fees from the effective

date of the Act to the date their final decrees were entered.

## I. FACTS

Prior to January 27, 1996, 28 U.S.C. § 1930(a)(6) required Chapter 11 debtors to pay quarterly fees to the UST "until a plan is confirmed or the case is converted or dismissed, whichever occurs first." Section 1930 was amended by Section 211 of the Act, which provides for the enactment of H.R.Conf.Rep. No. 104–378, as passed by the House of Representatives on December 6, 1995. In turn, the Conference Report, at Section 111(a), states that "Section 1930(a)(6) of title 28, United States Code, is amended by striking 'a plan is confirmed or.'" Thus, under the Act, a Chapter 11 debtor's obligation to pay quarterly fees still terminates on conversion or dismissal, but it no longer terminates on confirmation. Absent conversion or dismissal, the Act does not specify a termination date, although it is the UST's position that the obligation ceases when the case is closed after entry of a final decree.

Precision filed its Chapter 11 case on October 3, 1995, as a "small business" debtor and obtained an order of confirmation on December 15, 1995. Its plan commits all funds not necessary to sustain current operations to the repayment of creditors. On March 11, 1996, Precision filed a motion for a final decree, and the UST objected on the grounds that Precision had not paid quarterly fees from January 27, 1996, under 28 U.S.C. § 1930(a)(6), as amended. Precision responded that the Amendment should not apply to it because its plan was confirmed prior to the effective date of the Amendment. On March 11, 1996, Judge Overstreet entered a final decree and ordered that the case be closed, provided Precision pay into the court registry an amount sufficient to cover quarterly fees for the first quarter of 1996. Precision made the required deposit, and the Court took the quarterly fee issue under advisement.

WTD and its subsidiaries (including Sedro–Woolley Lumber Co.) filed 42 Chapter 11 petitions in 1991. The cases were jointly administered, and a joint plan was confirmed on November 23, 1992. On April 4, 1996, WTD filed a motion for final decrees for the 36 cases in which no adversary proceedings were pending. The UST objected, partly on the grounds that WTD had not paid quarterly fees for the first and second quarters of 1996. On April 26, 1996, Judge Steiner entered final decrees in all 36 cases and ordered the cases closed, reserving jurisdiction to determine whether the Amendment should apply to debtors whose plans were confirmed prior to the Amendment's effective date.

## II. JURISDICTION

The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157, inasmuch as the issues concern the duties of the Debtors under confirmed plans of reorganization, as well as their entitlement to a final decree thereunder.[1]

## III. ISSUE

The issue presented in these cases is whether a debtor with a plan confirmed prior to the effective date of the Act is liable for payment of the UST's post-confirmation quarterly fee.

## IV. DISCUSSION

The Debtors in these cases contend that requiring them to pay the post-confirmation fee amounts to an impermissible retroactive application of the Act. The UST counters that such application is not retroactive, and even if it were, Congress has declared its intention that the Act reach debtors with confirmed plans.

■ The reach of the Amendment is a question of statutory construction, to be determined by congressional intent if possible. *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)

---

1. On the effective date of the Act, there were pending in this Court 190 Chapter 11 cases with confirmed plans. Given the importance of this issue in this district, the judges of the district agreed to hear this matter collectively. Inasmuch as only the undersigned judges have this issue pending before them, however, only the undersigned judges have issued this opinion. This opinion is therefore binding only as to the two cases before us.

(hereafter, all citations to *Landgraf* are to L.Ed.). If congressional intent is not clear, courts employ a presumption that Congress intended statutes or statutory amendments to operate prospectively only. *Id.* at ——, 114 S.Ct. at 1505, 128 L.Ed.2d at 262. The presumption is a rule of construction only, however, and applies only if Congress has not clearly stated its intention that the statute apply retroactively. When the statute contains no command, the court must determine whether the statute would have retroactive effect. If the statute, as applied, has a retroactive effect, the presumption against retroactivity governs. *Id.* See also *Hyatt v. Northrop Corp.*, 80 F.3d 1425 (9th Cir.1996).

The only reported case directly on point is *In re Central Florida Electric, Inc.*, 194 B.R. 280 (Bankr.M.D.Fla.1996), *reconsideration granted* 197 B.R. 380 (1996). In that case, the UST took the position that the Amendment applied retroactively to the date of confirmation. Under this application, debtors with confirmed plans would be required to pay fees for quarters that predated the effective date of the Act. The Court rejected the UST's position and held that the Amendment did not apply to cases in which a confirmation order was entered prior to the Act's effective date. In its motion for reconsideration, the UST changed its position, contending that, as to debtors with confirmed plans, the fee should begin to accrue on the effective date of the Act, not on the earlier date of confirmation. The Court accepted the UST's position, concluding that Congress had "prescribed the reach" of the Amendment, and further that the application urged by the UST was "no longer necessarily retroactive." *Id.* We disagree, and hold that Congress' intent is not clear, and further that the UST's position does result in a retrospective application.

**A.** *Has Congress defined the proper reach of the Act?*

"[W]here the congressional intent is clear, it governs." *Landgraf*, 511 U.S. at ——, 114 S.Ct. at 1496, 128 L.Ed.2d at 251. Congress' directive must be "so clear and positive as to leave no room to doubt that [retroactive application] was the intention of the legisla-

ture." *Id.* at ——, 114 S.Ct. at 1500, 128 L.Ed.2d at 256 (citation omitted). "[C]ongressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result." *Id.* (citation omitted). The *Landgraf* Court noted that:

> [W]hile the *constitutional* impediments to retroactive civil legislation are now modest, prospectivity remains the appropriate default rule.... Requiring clear intent assures that Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits.

*Id.* at ——, 114 S.Ct. at 1501, 128 L.Ed.2d at 257.

Tracking the Amendment to Section 1930(a)(6) through the Balanced Budget Downpayment Act is a tedious process. The relevant portion of the Act provides as follows:

> Sec. 211. Public Law 104–91 is amended ... by inserting ... the following: ": *Provided,* with the exception of section 114, the General Provisions for the Department of Justice included in title I of the aforementioned conference report are hereby enacted into law".

In turn, Title I of Public Law 104–91, entitled "National Marine Fisheries Laboratory, Gloucester, Massachusetts," provides in pertinent part as follows:

> The following sums are hereby appropriated ... for the several departments, agencies, corporations, and other organizational units of Government for the fiscal year 1996, and for other purposes, namely:
>
> SEC. 101. (a) Such amounts as may be necessary under the authority and conditions provided in the applicable appropriations Act for the fiscal year 1995 for continuing the following projects or activities ... which were conducted in the fiscal year 1995:
>
> All projects and activities of the Judiciary to the extent and in the manner and at a rate for operations, notwithstanding any other provision of this Act, provided for in the conference report and joint explanato-

ry statement of the Committee of Conference (House Report 104–378) on the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1996 (H.R.2076), as passed by the House of Representatives on December 6, 1996....

The entire substance of the Amendment is contained in Section 111(a) of House Report 104–378, which provides simply that Section 1930(a)(6) of title 28, United States Code, is amended by striking "a plan is confirmed or." The Joint Explanatory Statement of the Committee of Conference contains the following commentary relating to United States Trustee System Funding:

> [U]nder section 111, the conferees agree to include an extension of post-confirmation quarterly fee payments made under Chapter 11 as proposed in both the House and Senate bills and expect that these fees will apply to all pending Chapter 11 cases with confirmed reorganization plans.

Further on, the Joint Explanatory Statement contains the following language:

> Sec. 111. —The conference agreement includes section 111 as proposed in the House and Senate bills, which extends the quarterly fee payments for debtors under Chapter 11 of the Bankruptcy Code to include the period from when a reorganization plan is confirmed by the Bankruptcy Court until the case is converted or dismissed. The conferees intend that this fee will apply to both pending and new cases.

Neither Sec. 211 of the Balanced Budget Act nor Sec. 101 of PL 104–01 contains a statement regarding the intended temporal scope of the Amendment. Nor is its reach defined in Section 111 of the House Conference Report, which embodies the substance of the Amendment. The only reference to the Amendment's scope is in the Joint Explanatory Statement, which states that the conferees intend the provision to apply to "both pending and new cases," and further that the conferees "expect that these fees will apply to all pending Chapter 11 cases with confirmed reorganization plans." H.R.Conf.Rep. No. 104–378.

The UST asserts that the Court may properly ascertain Congress' intent from the legislative history, where such intent is absent from the text of the law. In support of its position the UST cites *U.S. ex rel. Schumer v. Hughes Aircraft*, 63 F.3d 1512 (9th Cir. 1995), in which the Court states in *dicta*, "The first step of retrospectivity analysis is to consider whether Congress has demonstrated in the statute itself *or in its legislative history* an intent for the statute to apply retrospectively." *Id.* at 1517 (emphasis added). It is notable that the *Schumer* Court did not refer to legislative history when it addressed the retroactive application of the legislation before it, but concluded simply that "Congress did not demonstrate its intent that the [Act] should apply retrospectively." *Id.*

More to the point, in *Landgraf*, the Supreme Court conducted an extensive examination of the history behind the Civil Rights Act of 1991. After concluding that the background provided no reliable guidance, however, the Court noted:

> Although the passage of the 1990 bill may indicate that a majority of the 1991 Congress also favored retroactive application, even the will of the majority does not become law unless it follows the path charted in Article I, § 7, cl 2 of the Constitution. [Citation omitted]. In the absence of the kind of unambiguous directive found in § 15 of the 1990 bill, we must look elsewhere for guidance on whether § 102 applies to this case.

511 U.S. at ——, 114 S.Ct. at 1496, 128 L.Ed.2d at 251. In a concurring opinion, Justice Scalia accuses the Court of converting the " 'clear statement' rule into a 'discernible legislative intent' rule," noting:

> If it is a "clear statement" we are seeking, surely it is not enough to insist that the statement can "plausibly be read as reflecting general agreement"; the statement must *clearly* reflect general agreement. No legislative history can do that, of course, but only the text of the statute itself. That has been the meaning of the "clear statement" retroactivity rule from the earliest times.... I do not deem that clear rule to be changed by the Court's

dicta regarding legislative history in the present case.

*Id.* at ——, ——, 114 S.Ct. at 1522–23, 128 L.Ed.2d at 266, 267.

We need not decide whether the "clear statement" of intent must be contained in the text of the statute.[2] Even if it is permissible to search the legislative history for evidence of congressional intent, we conclude that no clear statement exists there. In *Central Florida Electric, supra,* the court concluded that Congress' intent is found in the Joint Explanatory Statement, *supra.* We disagree. The Joint Explanatory Statement contains two references to the quarterly fee. In the first, the conferees state their intention that "this fee will apply to both pending and new cases." H.R.Conf.Rep. No. 104–378. This statement says nothing about whether the fee will apply to cases with confirmed plans on the effective date. In the next reference, the conferees express their expectation that "these fees will apply to all pending Chapter 11 cases with confirmed reorganization plans." *Id.* This language is simply a restatement of the statute (i.e., that the fee will apply post-confirmation) and adds nothing. What is needed, but what is lacking from both the text of the Act and the legislative history, is a statement that the fees will apply to all pending Chapter 11 cases with confirmed plans *on the effective date of the Act.*

Neither the Act, the Joint Explanatory Statement, nor the context of this legislation provides evidence that Congress gave any consideration to the scope of this legislation. The Act is a revenue measure contained in an emergency funding and appropriations bill. The Amendment took everyone by surprise, including the UST and the bankruptcy courts. Thus, we can only conclude that Congress did not weigh the "potential unfairness of retroactive application" against its "countervailing benefits." *Landgraf,* 511 U.S. at ——, 114 S.Ct. at 1501, 128 L.Ed.2d

at 257. Since the legislation contains no clear expression of congressional intent, the next question is whether the Amendment's application to the Debtors has retroactive effect.

**B. *Does application of the Act to the Debtors have retroactive effect?***

 Deciding whether a statute operates retroactively is not necessarily simple or mechanical. *Id.* at ——, 114 S.Ct. at 1498, 128 L.Ed.2d at 254. A statute does not operate retroactively merely because it is applied in a case arising from conduct or a status predating a statute or its amendment (e.g., an extended statute of limitations), or because it upsets expectations based in prior law (e.g., a new tax or zoning regulation). *Id.* at ——, ——, 114 S.Ct. at 1498, 1499, 128 L.Ed.2d at 254, 255. *See also Cox v. Hart,* 260 U.S. 427, 435, 43 S.Ct. 154, 157, 67 L.Ed. 332 (1922). The focus must be on the "nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event." *Landgraf* at ——, 114 S.Ct. at 1499, 128 L.Ed.2d at 255. With those caveats in mind, the *Landgraf* Court stated that a federal statute operates retroactively when it (1) impairs rights a party had when he acted, (2) increases a party's liability for past conduct, or (3) imposes new duties with respect to transactions already complete. *Landgraf,* 511 U.S. at ——, 114 S.Ct. at 1505, 128 L.Ed.2d at 262. As applied to debtors with confirmed plans, the Amendment to Section 1930(a)(6) falls into the third category, *i.e.,* it imposes new duties with respect to a completed transaction.

**1. Does the Act impose a new duty as to a completed transaction?**

In the cases before the Court, there is no question that the Amendment imposes a new duty that did not exist upon confirmation of the plans. The UST concedes this. On the

---

**2.** When Congress has intended retroactive application of bankruptcy legislation, it has made that intent clear in the enacted statute. For example, Section 702 of the Bankruptcy Reform Act of 1994 specifies which sections apply retroactively and which do not. Similarly, Section 301 of the Bankruptcy Judges, United States Trustees, and

Family Farmer Bankruptcy Act of 1986 contains a clear statement of congressional intent regarding the temporal scope of various provisions. Thus, had Congress wished to define the reach of the Amendment in this instance, it could have done so in the text of the Act.

date of confirmation of the plans of Precision and WTD, Section 1930 required that the UST's fees be paid until confirmation. At confirmation, by the very language of the statute, the duty to pay the UST's fee terminated. Necessarily, the Act then imposes a new duty on the Debtors to pay the UST's fees post-confirmation.

Initially, Precision argued that the UST, as a creditor under its confirmed plan, was bound by the terms of its confirmed plan, which did not require Precision to pay any UST fees post-confirmation. Precision's argument was based upon the legal proposition that a confirmed Chapter 11 plan is a contract that binds the debtor and all creditors, including the UST. 11 U.S.C. § 1141(a). The UST argues that although the terms of the confirmed plan bind creditors, the plan cannot bind the UST with respect to an obligation that arises by operation of law, post-confirmation. *See Holywell Corporation v. Smith*, 503 U.S. 47, 112 S.Ct. 1021, 117 L.Ed.2d 196 (1992). The UST is correct only if the duty to pay post-confirmation fees is a new duty which arises post-confirmation, and clearly it is.

■ Next, we must determine whether plan confirmation is a completed transaction for purposes of the retroactivity analysis. We conclude that it is. An order of confirmation is a final, appealable order of the Court, binding on the debtors and all parties in interest, and is *res judicata* as to all matters relating to the plan. 11 U.S.C. § 1141(a); *In re Heritage Hotel Partnership*, 160 B.R. 374 (9th Cir. BAP 1993). Once a plan is confirmed, including any modifications made and confirmed under 11 U.S.C. § 1127, all that is left is its administration.

The UST contends that confirmation is not a "completed transaction" but merely an antecedent fact giving rise to a status. The UST notes that the requirement to pay fees is not triggered by plan confirmation, but rather by the fact of having an open Chapter 11 case. Since the fees are charged only from the Amendment's effective date, the UST contends that the Act is not retroactive.

In support of its position, the UST cites *Alabama State Docks Dept. v. Bunge Corp.*, 655 F.2d 64 (5th Cir.1981), and *McAndrews*

*v. Fleet Bank of Massachusetts*, 989 F.2d 13 (1st Cir.1993). *Alabama State Docks* addressed the retroactivity of a grain-storage tariff. The tariff was increased to provide for a graduated rate, with higher rates applying the longer grain was stored. On the effective date of the tariff, the defendant had already stored its grain for 130 days. The Department included this time in calculating the rate it charged the defendant. The court held that this did not constitute a retroactive application of the amendment, because the Department was charging the tariff only from the effective date of the amendment. "A statute is not retroactive merely because it draws upon antecedent facts for its operation." 655 F.2d at 67. In that case, the antecedent fact was the length of time that the defendant had had its grain in storage.

*McAndrews* dealt with the Financial Institutions Reform, Recovery and Enforcement Act (FIRREA). The Act was applied to authorize the Federal Deposit Insurance Corporation (FDIC), as receiver of a failed bank, to enforce a lease in which the bank was lessor, notwithstanding a "termination-upon-insolvency" clause in the lease. The plaintiff argued that this would eliminate the effect of an escape clause and was thus retroactive. The court disagreed, concluding that the contract was merely a fact antecedent to the statute's application, not the event triggering application of the statute. The triggering events were rather insolvency, the FDIC's appointment, and invocation of the escape clause.

In both *Alabama State Docks* and *McAndrews*, the parties asserting retroactive effect were parties to transactions that were essentially executory when new legislation took effect. The contracts had not been performed, so that in no sense could the transactions be deemed completed. The contracts were antecedent facts establishing a status. The courts have determined that legislation can impact a party's status without being deemed retroactive in effect.

These cases differ from the cases before us in one very important respect. In neither *Alabama State Docks* nor in *McAndrews* had there been an adjudication expressly defining

the limits of the parties' obligations. In the cases before us, the confirmed plans effect an adjudication of the parties' rights under the plans. The orders confirming the Debtors' plans are not interlocutory orders or events, defining the legal status of the reorganized Debtors and nothing more. Confirmation is the point after which no modification to a plan can be made absent appeal or compliance with Section 1127. It is the point at which the transaction is complete, after which new duties may not be imposed on the debtor, as debtor, absent the clear direction of Congress.

### 2. Is the Act procedural rather than substantive?

The UST argues further that the Amendment is not retroactive because it is a procedural provision, not affecting substantive rights. *See Landgraf* at ——, 114 S.Ct. at 1501, 128 L.Ed.2d at 258. The *Landgraf* Court noted that, because rules of procedure regulate secondary rather that primary conduct, a new procedural rule instituted after conduct giving rise to suit does not make application of the rule at trial retroactive. We conclude that the post-confirmation fee, as applied to these Debtors, is not merely a procedural regulation.

The imposition of the UST's post-confirmation quarterly fee on a debtor with a confirmed plan has a clear substantive impact on the debtor and thus cannot be deemed merely procedural. The fee adversely affects all creditors and the debtor under the plan in the case where the plan payments have been carefully structured, in both timing and amount, to coincide with the debtor's financial performance. To achieve confirmation, a debtor must meet strict statutory criteria and must convince creditors and the UST that performance is feasible within the parameters of its projected expenses. Further, an order of confirmation must be supported by a specific finding by the Court that the projections are realistic and the payments feasible. Thus, in the most important sense, plan confirmation establishes the substantive rights of all parties bound by the plan.

Finally, in most cases, the consideration to be paid to creditors under a confirmed plan necessarily will be paid after confirmation. Therefore, a debtor with a confirmed plan will be much more likely to be subject to the maximum amount of the UST's fees after confirmation than before. The imposition of the new UST's post-confirmation fee may result in the debtor's default under the plan because payment of those fees was not contemplated at the time of plan confirmation and hence not calculated into the scheduled payments. Thus, the fee will have a substantive effect on the debtor's performance under the plan.

### 3. Is the UST's interpretation of the Act entitled to any judicial deference?

Finally, the UST Trustee invokes the principle that a court should give deference to the interpretation of the agency charged with the enforcement of an ambiguous statute, citing *Samaniego–Meraz v. INS*, 53 F.3d 254 (9th Cir.1995). This principle requires deference to an agency's interpretation "whenever decision as to the meaning or reach of a statute has involved reconciling conflicting policies, and a full understanding of the force of the statutory policy in the given situation has depended upon more than ordinary knowledge respecting the matters subjected to agency regulations." *Chevron U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (citations omitted).

The present inquiry does not involve conflicting policies, nor does the subject matter require the special expertise of the UST. Rather, the issue of retroactivity is within the special province of the Court. As noted by the *Landgraf* Court:

> The conclusion that a particular rule operates "retroactively" comes at the end of a process of judgment concerning the nature and extent of the change in the law and the degree of connection between the operation of the new rule and a relevant past event. Any test of retroactivity will leave room for disagreement in hard cases, and is unlikely to classify the enormous variety of legal changes with perfect philosophical clarity. However, *retroactivity is a matter on which judges tend to have "sound ... instinct[s]," [citation omitted], and familiar considerations of fair notice, reason-*

*able reliance, and settled expectations offer sound guidance.*

*Landgraf* at ——, 114 S.Ct. at 1499, 128 L.Ed.2d at 255 (emphasis added).

Having concluded that the Act, as applied, has retroactive effect, the presumption is that it does not govern absent clear Congressional intent favoring such a result.

> Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to confirm their conduct accordingly; settled expectations should not be lightly disrupted. For that reason, the "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal."

*Landgraf,* 511 U.S. at ——, 114 S.Ct. at 1497, 128 L.Ed.2d at 252 (citation omitted).

### C. As to cases with confirmed plans on the effective date, may the Court condition entry of a final decree on payment of post-confirmation quarterly fees?

Even if the UST's application of the Amendment does not have retroactive effect, so that the Debtors are liable for the quarterly fee from the effective date, there remains the issue of enforcement. Specifically, may the Court compel payment of the fee by making it a condition to the entry of the final decree? We conclude that it may not.

Nothing in the Act or the Joint Explanatory Statement suggests that a debtor's right to a final decree may be held up for nonpayment of the fee. Pursuant to Rule 3022, F.R.Bankr.P., the Court is required to enter a final decree once the plan is fully administered. The term "fully administered" is not defined in the Bankruptcy Code. The Advisory Committee Note to Rule 3022, however, offers the following list of factors to be considered in making the determination: (1) finality of the confirmation order, (2) distribution of deposits, (3) transfer of property as proposed by the plan, (4) assumption of the business or management of property under the plan, (5) commencement of payments, and (6) final resolution of motions, contested matters, and adversary proceedings. Each of the factors listed relates strictly to obligations imposed by the plan and confirming order. Thus, while the list is not exclusive, it is indicative that the only preconditions to entry of a final decree are those relating to the plan and/or the order of confirmation.

By objecting to entry of a final decree for nonpayment of post-confirmation fees, the UST would impose an additional condition that was not contained in the plan or confirming order. In support of its position, the UST cites *Holywell Corporation v. Smith,* 503 U.S. at 56, 112 S.Ct. at 1027. In *Holywell,* the issue was whether a liquidating trustee appointed pursuant to a plan was obligated to file tax returns for the estates and pay the taxes owed for post-confirmation periods. The Court held that he was. In that case, however, there was no attempt to hold up entry of the final decree pending payment of the taxes owed. Thus, while a reorganized debtor is generally liable for obligations arising after confirmation, such obligations need not be satisfied by the debtor prior to entry of a final decree. Similarly, a reorganized debtor may be subject to changes in the law occurring after confirmation. However, absent a clear statement in the legislation, such changes cannot alter the conditions of the plan or the debtor's entitlement to a final decree once those conditions have been met. It follows that in the present cases, imposition of the post-confirmation quarterly fee cannot in any event alter the Debtors' rights to a final decree if otherwise entitled.

### Conclusion

For the foregoing reasons, we conclude that because the application of the Act to debtors with confirmed plans on the effective date does have a retroactive effect, and because neither the Act nor the legislative history to the Act clearly evidences Congress' desire that the Act be applied retroactively, the fee may not be charged to the Debtors. In any event, nonpayment of the fee may not be a condition to entry of a final decree. Accordingly, the Clerk of the Court is directed to return to Precision the funds it deposited into the Court registry to cover the post-

confirmation UST fees and the UST's claim against WTD for such fees is denied.