In re HUDSON OIL COMPANY, INC., Hudson Refining Company, Inc., Hudson Van Oil Company of Kansas City, Inc., Hudson Realty Company, Inc., Hudson Stations, Inc., Hudson Van Oil Company of Florida, Inc., Hudson Oil Company of California, Inc., Hudson Van Oil Company, Debtors.

Bankruptcy Nos. 84–20002 to 84–20009.

United States Bankruptcy Court, D. Kansas.

Aug. 27, 1996.

Thomas M. Mullinix, Joanne B. Stutz, Lenexa, Kansas, for Unsecured Creditors' Committee.

Richard A. Wieland, Office of United States Trustee, Wichita, Kansas.

## MEMORANDUM OF DECISION

JAMES A. PUSATERI, Chief Judge.·

This matter is before the Court on the United States Trustee's motion to compel the Hudson Liquidating Trust to pay the new post-confirmation quarterly fees purportedly imposed in these cases by 28 U.S.C.A. § 1930(a)(6) as amended by the Balanced Budget Downpayment Act, I, Pub.L. No. 104–99, § 211, 1996 U.S.C.C.A.N. (110 Stat.) 26, 37–38 (1996), effective January 26, 1996. The Unsecured Creditors' Committee (UCC) for the above-named debtors, the proponent of the reorganization plan confirmed in 1990, opposes the motion. As part of the plan, the debtors were all substantively consolidated. The Court has reviewed the relevant materials and is now ready to rule.

█ Until January, 28 U.S.C.A. § 1930(a)(6) provided in pertinent part: "[A] quarterly fee shall be paid to the United States trustee . . . in each case under chapter 11 of title 11 for each quarter . . . until a plan is confirmed or the case is converted or dismissed, whichever occurs first." In a somewhat roundabout way,[1] § 211 of the Bal-

---

1. A part of the lengthy struggle and numerous appropriations bills that were required to complete the federal budget this fiscal year, section 211 provides:

> Public Law 104–91 is amended by inserting after the words "the protection of the Federal judiciary" in section 101(a) the following: "to the extent and in the manner and", and by inserting at the end of the paragraph containing those words, but before the semicolon, the following: ": *Provided*, That, with the exception of section 114, the General Provisions for the Department of Justice included in title I of

the aforementioned conference report are hereby enacted into law".

*1996 U.S.C.C.A.N. (110 Stat.) 37–38.* Title I of Public Law No. 104–91, in turn, provides:

> The following sums are hereby appropriated . . . namely:
>
> Sec. 101. (a) Such amounts as may be necessary under the authority and conditions provided in the applicable appropriations Act for the fiscal year 1995 for continuing the following projects or activities . . . which were conducted in the fiscal year 1995:
>
> . . . .

anced Budget Downpayment Act struck the words "until a plan is confirmed or" from that subsection, effective January 26, 1996. The Court notes the amendment generates immediate confusion because a chapter 11 case in which a plan is confirmed will generally not be converted or dismissed. For such cases, the amendment seems to specify no end to the obligation to pay quarterly fees. *See In re C n' B of Florida,* 198 B.R. 836, 837–38 (Bankr.M.D.Fla.1996).

The UCC contends this new obligation is imposed on debtors, and the Hudson Liquidating Trust does not owe the fees because it is separate and distinct from the consolidated debtors. A review of the provisions of the agreement which established the trust reveals the trust is a liquidating and disbursing agent for the debtors, and would have to pay the fees if they apply to the debtors. The trust is to pay taxes assessed against the debtors based on income from the trust assets, ¶ 2.3, the trust is not a taxable entity and the debtors will be taxed on capital gains and income which the trust might realize, ¶ 2.12, the trustee of the trust may be removed only by an order approved by the bankruptcy court, ¶ 4.1, the trustee may abandon trust assets to the debtors if certain conditions are met, ¶ 7, and the trust agreement may be modified, terminated, or re-

voked only by a bankruptcy court order, ¶ 8.2. Clearly the trust is not independent of the debtors and is subject to continuing bankruptcy court supervision. If the debtors are liable for the new quarterly fees, the trust will be, too.

The Trustee contends the amendment imposes quarterly fees from its effective date forward for all pending chapter 11 cases, including those in which a plan was confirmed before that date, but ending when a final decree is entered. This theory creates an immediate conflict with the order confirming the plan. Section 1129(a) provides: "The court shall confirm a plan only if all of the following requirements are met: ... (12) All fees payable under section 1930 of title 28, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan." Obviously, plans that were confirmed before the amendment could not have provided for paying quarterly fees after confirmation and the effective date of the plan because they would not have satisfied this provision. If the Trustee is right that the amendment applies to an already confirmed plan, the plan would have become unconfirmable after the bankruptcy court had already declared it to be confirmed.[2] In addition, with certain excep-

[Sixth unnumbered paragraph]: All projects and activities of the [FBI], [DEA], Interagency Crime and Drug Enforcement, Federal Prison System, [U.S.] Attorneys, [U.S.] Marshals Service, Federal Prisoner Detention, Fees and Expenses of Witnesses, [INS], and the Executive Office for Immigration Review, necessary for ... the protection of the Federal judiciary at a rate for operations, ... provided for in the conference report and joint explanatory statement of the Committee of Conference (House Report 104–378) on the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1996 (H.R.2076), as passed by the House of Representatives on December 6, 1995; *1996 U.S.C.C.A.N. (110 Stat.) 7, 10–11.* Thus, with its additions italicized, Public Law 104–99 makes Public Law 104–91 appropriate money "necessary for ... the protection of the Federal judiciary *to the extent and in the manner and* at a rate for operations, ... provided for in the conference report and joint explanatory statement of the Committee of Conference (House Report 104–378) on the Departments of Commerce, Justice, and State, the Judiciary, and Related Agencies Appropriations Act, 1996 (H.R.2076), as

passed by the House of Representatives on December 6, 1995: *Provided, That, with the exception of section 114, the General Provisions for the Department of Justice included in title I of the aforementioned conference report are hereby enacted into law; ".* Title I of that conference report deals with the Department of Justice and, following many unnumbered paragraphs, contains many numbered sections, including § 111 which contains the amendment described in the text. *H.R.Rep. No. 104–378, 104th Cong., 1st Sess. (1995), printed in 141 Cong.Rec. 13874, 13878 (daily ed. Dec. 4, 1995).*

**2.** The amendment creates a difficult problem even for plans proposed after it took effect. Unless the effective date of the plan can be delayed indefinitely until the case is ready to be closed, how is a plan to provide that § 1930 fees will be paid by the effective date when the amount of post-confirmation fees that will be owed cannot be determined in advance? Other confirmation requirements preclude indefinitely postponing the effective date. (For example, § 1129(a)(7)(A) requires that creditors either accept the plan or receive property with a value as of the effective

tions not applicable here, § 1141 provides that a confirmed plan binds the debtor, any creditor, and any entity acquiring property under the plan, that all property of the estate vests in the debtor except as otherwise provided in the plan or confirmation order, and that property dealt with by the plan is free and clear of all claims and interests of creditors. The Trustee is bound by the plan because it would have received property under the plan in the form of preconfirmation quarterly fees and, in light of its claim for quarterly fees, is at least possibly a creditor in all chapter 11 cases. *See 11 U.S.C.A. § 101(5) (defining "claim") and (10) (defining "creditor").* In effect, the Trustee is seeking to modify the confirmed plan, even though § 1127(b) says only the plan proponent or reorganized debtor may modify a plan after confirmation, and then only before substantial consummation, which undoubtedly occurred long ago in this case. *See § 1101(2) (defining "substantial consummation").*

The UCC also asserts that the Hudson Liquidating Trust holds assets for the exclusive purpose of satisfying the claims of the creditors entitled to be paid under the confirmed plan. One court, explaining why it thought the quarterly fee amendment was substantive rather than procedural, said:

> The imposition of the [U.S. Trustee's] post-confirmation quarterly fee on a debtor with a confirmed plan has a clear substantive impact on the debtor and thus cannot be deemed merely procedural. The fee adversely affects all creditors and the debtor under the plan in the case where the plan payments have been carefully structured, in both timing and amount, to coincide with the debtor's financial performance. To achieve confirmation, a debtor must meet strict statutory criteria and must convince creditors and the [Trustee] that performance is feasible within the parameters of its projected expenses. Further, an order of confirmation must be supported by a specific finding by the

Court that the projections are realistic and the payments feasible. Thus, in the most important sense, plan confirmation establishes the substantive rights of all parties bound by the plan.

*In re Precision Autocraft,* 197 B.R. 901, 907 (Bankr.W.D.Wash.1996). These concerns are heightened for many liquidating plans. An operating reorganized debtor may have some ability to exceed preconfirmation projections and produce sufficient income to cover these new fees as well as the payments already called for by the plan. In a liquidating case, however, if these fees must be paid, they will ordinarily have to come from money that creditors specified in the plan would otherwise expect and be entitled to receive. This liquidating plan is unusual, though, because the Hudson Liquidating Trust is still operating some gas stations while it tries to sell them, so those operations might supply money to pay the fees. Nevertheless, the intended finality of the confirmed plan would be circumvented by imposing the fees in these cases.

■ Although there are cases to the contrary, the Court also agrees with the reasoning expressed in *Precision Autocraft* where the court concluded that the amendment would be retroactive if it required quarterly fees to be paid in a chapter 11 case in which a plan was confirmed before the amendment's effective date, and that Congress did not clearly express its intent to do so. 197 B.R. at 902–07. As indicated there, statutes are presumed to apply prospectively only. *See Landgraf v. USI Film Products,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994).

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command,

---

date that is not less than they would receive if the debtor were liquidated under chapter 7. The longer the effective date is delayed, the more difficult it becomes to prove this requirement is satisfied.) Unless the amendment is construed

as having also amended § 1129(a)(12) to permit provisions for paying quarterly fees that accrue after the plan's effective date, it is difficult to see how any new plan can ever satisfy § 1129(a)(12).

the court must determine whether the new statute would have retroactive effect, *i.e.,* whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

511 U.S. at ——, 114 S.Ct. at 1505, 128 L.Ed.2d at 261–62. The cases suggesting or concluding the amendment would not operate retroactively even if applied to already confirmed plans have said this is so simply because no fee is imposed before the effective date of the amendment. *In re Foxcroft Square Co.,* 198 B.R. 99 (Bankr.E.D.Pa.1996); *In re Upton Printing,* 197 B.R. 616 (Bankr. E.D.La.1996); *In re Central Florida Electric,* 197 B.R. 380 (Bankr.M.D.Fla.1996). This view seems to overlook the significance of the process that resulted in the confirmation of the plan before the amendment took effect. It might be correct if Congress had enacted a completely new statute of general application that happened to apply to an entity operating under a confirmed chapter 11 plan. However, the amendment changes a bankruptcy-specific statute that already applied to these cases preconfirmation. To apply it here would reimpose an obligation that had terminated under the same statute before it was amended. It does not impose a new fee but changes the events that can terminate the obligation, eliminating the one that terminated it in these cases. This Court concludes a confirmed plan is a completed transaction as contemplated by *Landgraf,* and the amendment would impose new duties if applied to a plan confirmed before its effective date. *Precision Autocraft, 197 B.R. at 905–07.* Consequently, the ordinary presumption that Congress intended the amendment to apply prospectively only controls, unless its contrary intent has been clearly expressed.

Obviously, the amendment itself does not indicate that it should apply to cases in which plans have previously been confirmed. While Justices Scalia, Kennedy, and Thomas insist the search for Congress's intent should end with the statutory text, *Landgraf,* 511 U.S. at ——, 114 S.Ct. at 1522, 128 L.Ed.2d at 266–67 *(concurring opinion),* a majority of the Supreme Court indicated a statute's legislative history might provide the necessary expression of intent, 511 U.S. at ——, 114 S.Ct. at 1495–96, 128 L.Ed.2d at 250–51. The House Report which contained the amendment adopted by the Balanced Budget Downpayment Act, I, also included the Joint Explanatory Statement of the Committee of the Conference, which contains two statements concerning the purpose of the amendment:

> [U]nder section 111, the conferees agree to include an extension of post-confirmation quarterly fee payments made under Chapter 11 as proposed in both the House and Senate bills and expect that these fees will apply to all pending Chapter 11 cases with confirmed reorganization plans.

*H.R.Rep. No. 104–378, 104th Cong., 1st Sess. (1995), printed in 141 Cong.Rec. 13874, 13894.*

> Sec. 111.—The conference agreement includes section 111 as proposed in the House and Senate bills, which extends the quarterly fee payments for debtors under Chapter 11 of the Bankruptcy Code to include the period from when a reorganization plan is confirmed by the Bankruptcy Court until the case is converted or dismissed. The conferees intend that this fee will apply to both pending and new cases.

*141 Cong.Rec. 13899.* The first statement comes the closest to supporting the Trustee's position, since "all pending Chapter 11 cases with confirmed reorganization plans" can be read to refer to all such cases no matter when their plans are confirmed. However, especially in light of the Supreme Court's reluctance to apply a statute retroactively and the problems noted above that would be created by applying the provision to already-confirmed plans, it can also be read simply to indicate Congress wanted the amendment to apply to pending cases in which a plan is confirmed after the effective date of the amendment and not just to new cases filed after that date. This Court is convinced the legislative history does not supply the clear statement the Supreme Court has demanded

before it will apply new legislation retroactively.

A recent Supreme Court decision supplies an additional reason not to apply the amendment to plans confirmed before its effective date. The Court has often indicated it will construe a statute in such a way as to avoid a difficult constitutional question. *See e.g., Landgraf,* 511 U.S. at ——, 114 S.Ct. at 1505–06, 128 L.Ed.2d at 262–63; *New York v. United States,* 505 U.S. 144, 169–72, 112 S.Ct. 2408, 2424–26, 120 L.Ed.2d 120, 146–47 (1992). In *Plaut v. Spendthrift Farm, Inc.,* —— U.S. ——, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995), the Court held that Congress's attempt to require federal courts to reopen final judgments in private civil actions under § 10(b) of the Securities Exchange Act of 1934 was invalid because it violated the Constitution's separation of powers. The Court said:

> Article III establishes a "judicial department" with the "province and duty … to say what the law is" in particular cases and controversies. *Marbury v. Madison,* 1 Cranch 137, 177, 2 L.Ed. 60 (1803). The record of history shows that the Framers crafted this charter of the judicial department with an expressed understanding that it gives the Federal Judiciary the power, not merely to rule on cases, but to *decide* them, subject to review only by superior courts in the Article III hierarchy—with an understanding, in short, that "a judgment conclusively resolves the case" because "a 'judicial Power' is one to render dispositive judgments." Easterbrook, Presidential Review, 40 Case W.Res.L.Rev. 905, 926 (1990). By retroactively commanding the federal courts to reopen final judgments, Congress has violated this fundamental principle.

—— U.S. at ——, 115 S.Ct. at 1452–53, 131 L.Ed.2d at 342. The ruling in *Plaut* certainly raises a serious question about the constitutionality of the Trustee's theory, but two distinctions prevent this Court from simply declaring that the decision definitely forecloses the theory. First, it is not always easy to determine which judicial orders in bankruptcy cases should be treated as final judgments. Still, an order confirming a reorganization plan in a chapter 11 case is nearly the closest equivalent (an order closing or dismissing the case would probably be closer) to a final judgment in an ordinary civil case. *See Pizza of Hawaii v. Shakey's (In re Pizza of Hawaii),* 761 F.2d 1374, 1378 (9th Cir. 1985). Such an order is the ultimate goal of chapter 11, as even a cursory review of the Bankruptcy Code's provisions in that chapter should make clear. Second, the fact bankruptcy courts are not Article III courts may create some uncertainty about the propriety of applying *Plaut* directly to a confirmation order. Nevertheless, this Court is a "unit" of an Article III court, *28 U.S.C.A. § 151,* and jurisdiction over bankruptcy cases is referred from that Article III court to this Court, *§ 157(a),* so *Plaut* certainly places the Trustee's theory in some doubt which can be avoided by refusing to apply the amendment to previously-confirmed plans.

For these reasons, the Court concludes the United States Trustee's motion to compel the Hudson Liquidating Trust to pay post-confirmation quarterly fees in these cases must be denied. Section 211 of the Balanced Budget Downpayment Act, I, Pub.L. No. 104–99, 1996 U.S.C.C.A.N. (110 Stat.) 26, 37–38 (1996), amending 28 U.S.C.A. § 1930(a)(6), does not apply to cases in which a chapter 11 reorganization plan was confirmed before the effective date of that act.

The foregoing constitutes Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered on a separate document as required by FRBP 9021 and FRCP 58.