## In re BEECHKNOLL NURSING HOMES, INC. and Beechknoll Woods Company, Debtors.

### Bankruptcy No. 92–14919.

United States Bankruptcy Court,
S.D. Ohio.

Nov. 4, 1996.

Stephen D. Lerner, Taft Stettinius & Hollister, Cincinnati, OH, for Petitioner.

Donald M. Robiner, U.S. Trustee, Ohio/Michigan Region 9, Cleveland, OH, Neal J. Weill, Assistant U.S. Trustee, Cincinnati, OH, for Respondent.

## ORDER RE: POST–CONFIRMATION QUARTERLY FEES

J. VINCENT AUG, Jr., Bankruptcy Judge.

This matter is before the Court on the Debtors' Motion for Entry of Final Decree Closing Case (Doc. 182), the United States Trustee's Response (Doc. 183), and the Debtors' Reply (Doc. 185). A hearing was held on September 18, 1996.

Prior to January 26, 1996, 28 U.S.C. § 1930(a)(6) required Chapter 11 debtors to pay quarterly fees to the United States Trustee "until a plan is confirmed or the case is converted or dismissed, whichever occurs first." Effective January 26, 1996, § 1930(a)(6) was amended by deleting the reference to plan confirmation and now requires the payment of quarterly fees "until the case is converted or dismissed, whichever occurs first." The issue before the Court is whether the Debtors are liable for the payment of quarterly fees subsequent to the effective date of the amendment to § 1930(a)(6) [1].

The Debtors contend that the imposition of quarterly fees beginning in January 1996 is an impermissible retroactive application of § 1930(a)(6). The Debtors also contend that confirmation and substantial con-

---

1. On October 7, 1996, a Final Decree closing the case as of September 18, 1996 was entered, reserving the Court's jurisdiction to determine this issue. (Doc. 187).

summation of their plan prior to January 1996 should negate the amended statutory fee requirement. The United States Trustee contends that quarterly fees are to be paid until the entry of a final decree closing the case.

These Chapter 11 cases were commenced by the filing of the Debtors' voluntary petitions on September 28, 1992 and were administratively consolidated shortly thereafter. On November 12, 1993, the Debtors filed their Second Amended Joint Plan of Reorganization, which was confirmed on January 18, 1994. No pleadings were filed in the main case subsequent to February 1995. It is undisputed that as of January 1996, the plan was substantially consummated within the meaning of 11 U.S.C. § 1101(2) and the case was fully administered within the meaning of 11 U.S.C. § 350. Specifically, the Confirmation Order was not appealed and became a final order on or around January 29, 1994; there are no undistributed deposits; there is no untransferred property; the reorganized Debtors have assumed the business; plan payments have commenced; and there are no motions, contested matters, or adversary proceedings before the Court. *See* Bankruptcy Rule 3022, Advisory Committee note to 1991 amendment.

The amendment to § 1930(a)(6) was budgetary in nature, enacted for the purpose of funding the United States Trustee program. It is clear from the amendment that Congress intended for quarterly fees to be paid by Chapter 11 debtors in the post-confirmation period. However, the amended statute is nonsensical because it requires the payment of quarterly fees until the end of time. *See C n' B of Florida, Inc.*, 198 B.R. 836, 838 (Bankr.M.D.Fla.1996). That Congress was laboring under a misconception when it enacted this amendment is evident from the initial House Report from the Committee on Appropriation: "The Committee recommendation includes an extension of the quarterly fee payments made under Chapter 11 to include the period after a reorganization plan has been confirmed by the Bankruptcy Court until the case has been dismissed (i.e., the post-confirmation period)." H.R.Rep. No. 104–196, at 34 (1995). On the contrary, the

majority of cases with confirmed plans are not dismissed (or converted). Accordingly, there must be one or another benchmark which may be used to terminate a "successful" debtor's duty to pay quarterly fees. This is especially true in view of the fact that quarterly fees are not insubstantial. Pursuant to the statute, even in a case with no distributions, quarterly fees would total $1,000.00 a year.

The United States Trustee contends that the cut-off should be the entry of a final decree closing the case. This suggestion has some appeal: it is a date certain; it would encourage debtors to close cases expeditiously; it would satisfy the budgetary policy behind the amendment by allowing for post-confirmation quarterly fees; and, there is admittedly little for the United States Trustee to do after a case has been closed.

On the other hand, the United States Trustee's proposal is problematic. Traditionally, the entry of a final decree has meant more to the Court than to the parties. It is viewed as an administrative step, allowing the Clerk to physically remove the case file from its often overcrowded shelves and send it to the appropriate storage facility. While a final decree is entered after a case has been fully administered, the final decree is rarely, if ever, entered at the exact point in time at which a case becomes fully administered. Rather, the final decree is typically entered upon notice by the Court, when the Court staff has time to issue said notice, and not upon motion of the parties. The final decree is accompanied by a Supplemental Bankruptcy Closing Report, which the parties do not see, for use by the Statistics Division of the Administrative Office. A final decree does not deprive the Court of jurisdiction and a closed case may always be reopened. *See* Bankruptcy Rule 3022, Advisory Committee note to 1991 amendment. In sum, a final decree, while sounding somewhat dramatic, does not adjudicate any rights between any parties. We question the propriety of placing more importance on this administrative event than was ever intended by Congress.

Also, the existence of one relatively minor contested matter or adversary action taken

up on appeal could prohibit the entry of a final decree for years. *See C n' B of Florida, Inc.*, 198 B.R. at 839. Furthermore, payments to creditors under a plan may be made *after* the entry of a final decree. This cuts against the United States Trustee's contention that post-confirmation quarterly fees are justified because such fees will allow the Trustee to monitor payment of the post-confirmation payments to creditors. Lastly, we observe that tying the quarterly fee to the final decree will likely tie the final decree to the quarterly fee. Although the United States Trustee in this case did not condition the entry of a final decree on the post-confirmation quarterly fee, *see supra* note 1, this Court can easily envision a situation where the debtor cannot be found or for some other reason does not pay a quarterly fee, therefore preventing the entry of a final decree and creating a self-perpetuating case where no activity takes place, the quarterly fees keep generating, and the case is never closed.

In the present case, because the Debtors' plan was confirmed and substantially consummated prior to January 1996, we find that it is not necessary to determine whether the entry of a final decree, or some other "event", such as substantial consummation[2], *see C n' B of Florida, Inc.*, 198 B.R. at 840, will suffice to terminate the debtor's duty to pay quarterly fees.

█ In the absence of clear intention to the contrary, statutes are to be applied prospectively only. *Landgraf v. USI Film Products*, 511 U.S. 244, ——, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994). Amended § 1930(a)(6) contains no statement, clear or otherwise, that it should be applied retroactively. Assuming, *arguendo*, that a resort to the legislative history is permissible for evidence of Congressional intent, *see United States v. Ron Pair*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (legislative history should be reviewed only when the plain meaning of a statute produces a "result demonstrably at odds with the intentions of its drafters"), the legislative history surrounding the amendment to § 1930(a)(6) does not state that quarterly fees shall be paid by debtors with confirmed and substantially consummated plans as of the effective date of the amendment. *See Precision Autocraft, Inc.*, 197 B.R. 901, 905 (Bankr. W.D.Wash.1996). Even if the legislative history did so state, we would question the validity of Congress' intent in view of Congress' misconception that all cases with confirmed plans are eventually dismissed. *See supra* p. 2. Accordingly, we find that amended § 1930(a)(6) should not be applied retroactively. We further find that requiring these Debtors to pay quarterly fees beginning in January 1996, where their plans were confirmed in January 1994 and where their plans were substantially consummated and their cases fully administered at some point in time prior to January 1996, imposes new duties with respect to a completed transaction, and, as such, results in an impermissible retroactive application. *See Landgraf*, 511 U.S. at ——, 114 S.Ct. at 1505; *See also Precision Autocraft, Inc.*, 197 B.R. 901, 906–08 (Bankr.W.D.Wash.1996); *Hudson Oil Co.*, 200 B.R. 52, 55 (Bankr.D.Kan.1996); *CF & I Fabricators of Utah, Inc.*, 199 B.R. 986, 995–99 (Bankr.D.Utah 1996).

In the present case, the imposition of post-confirmation quarterly fees also runs afoul of 11 U.S.C. § 1129(a)(12), which states that a plan may be confirmed only if "all fees payable under section 1930 of title 28, as determined by the court at the hearing on confir-

---

**2.** On the bankruptcy time line, substantial consummation occurs sometime after confirmation but before the entry of a final decree. The requirements of substantial consummation are fewer than those of full administration of a case. *Compare* Bankruptcy Rule 3022, Advisory Committee note to 1991 amendment *to* U.S.C. § 1101(2). For instance, a lingering contested matter may prevent a case from being fully administered, and hence the entry of a final decree, but it would not prevent a plan from being substantially consummated. Furthermore, once a plan has been substantially consummated, the case may not be converted or dismissed. *See* 11 U.S.C. § 1112(b)(7). It should also be noted that two of the three reported cases which have held that the debtors did have to pay post-confirmation quarterly fees, *Upton Printing*, 197 B.R. 616 (Bankr.E.D.La.1996), and *Foxcroft Square Company*, 198 B.R. 99 (Bankr.E.D.Penn.1996), were cases where the plans had been confirmed but not substantially consummated as of the effective date of the statutory amendment.

mation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan." *See Hudson Oil Co.,* 200 B.R. at 53; *CF & I Fabricators of Utah, Inc.,* 199 B.R. at 994. Furthermore, the United States Trustee's position seeks to modify a confirmed plan in violation of § 1127(b), which states that only a plan proponent or reorganized debtor has standing to seek such a modification and which states that modification may occur only before substantial consummation. *See Hudson Oil Co.,* 200 B.R. at 54; *CF & I Fabricators of Utah, Inc.,* 199 B.R. at 991.

This holding is further supported by the rationale that administrative fees paid by the parties to a lawsuit should bear some relationship to the administration of the lawsuit. The United States Trustee system is meant to be self-funded and to be paid for by the users of the bankruptcy system. The payment of post-confirmation fees to the United States Trustee should work a benefit to either the debtor, the estate, and/or the creditors. The United States Trustee has been unable to articulate what specific post-confirmation activities are in need of monitoring, other than to insure that creditors are being paid pursuant to the plan. However, this is clearly not the reason for the genesis of the post-confirmation quarterly fee and it seems to this Court that the service should justify the fee rather than the other way around.

In conclusion, we hold that the Debtors are not required to pay post-confirmation quarterly fees.

IT IS SO ORDERED.