**In re CF&I FABRICATORS OF UTAH, Debtor.**

**UNITED STATES TRUSTEE, Appellant,**

v.

**CF&I FABRICATORS OF UTAH, Appellee.**

No. 2:96–CV–920C.
Bankruptcy No. 90B–26721.

United States District Court,
D. Utah,
Central Division.

April 24, 1997.

**17**

Peter Kuhn, Salt Lake City, UT, Paul Bridenhagen, U.S. Department of Justice, Civil Division, Washington DC, Walter W. Theus, Office of U.S. Trustee, Columbia, SC, and Laurie A. Crandall, U.S. Trustee's Office, Salt Lake City, UT, for U.S. Trustee.

Weston Harris, Ray Quinney & Nebeker, Salt Lake City, UT, for appellee.

---

1. The record indicates that none of the debtors has engaged in any business operations in the

## ORDER

CAMPBELL, District Judge.

Appellant, the United States Trustee ("UST"), appeals the September 5, 1996 Order of the United States Bankruptcy Court which found that the UST could not collect additional quarterly fees from appellees, CF&I Fabricators of Utah and nine related entities (collectively "debtors"), under 28 U.S.C. § 1930(a)(6), as amended. Oral argument on the UST's appeal was heard on March 27, 1997. Peter Kuhn, Paul Bridenhagen, Walter Theus, and Laurie Crandall appeared on behalf of the UST; appellee was represented by Weston Harris. Having considered the arguments of counsel presented at the hearing and the memoranda filed by the parties, the court reverses the September 5, 1996 Order and remands the matter to the bankruptcy court for further proceedings consistent with this decision.

## BACKGROUND

On November 7, 1990, debtors filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code. The cases were jointly administered by the bankruptcy court, and, on February 12, 1993, the court approved the debtors' and Railroad Trustee's First Amended and Restated Joint Plan of Reorganization ("plan"). The plan details how the debtors' assets are to be liquidated to satisfy the claims of creditors; specifically, all assets in the debtors' estates, including the proceeds of an asset purchase agreement and the net proceeds of any post-confirmation operation of the debtors,[1] are allocated to creditors. It is not disputed that the plan is substantially consummated.

The bankruptcy court has not entered an order of conversion or dismissal in any of the CF&I cases, and the debtors have not sought a final decree. The bankruptcy court maintains jurisdiction over the cases, primarily to resolve claim issues. Because appeals remain pending before the district court and there is a possibility that appeals will be taken to the Tenth Circuit Court of Appeals,

last two years.

debtors estimate that jurisdiction will remain with the bankruptcy court, without dismissal, conversion, or a final decree, for approximately four years.

In April 1996, the UST assessed nine of the debtors fees of $250.00 each, and the tenth debtor fees of $3,750.00, pursuant to 28 U.S.C. § 1930(a)(6), as amended. Debtors paid the assessments and then filed a motion requesting the bankruptcy court to order the UST to refund the amounts paid. The bankruptcy court granted the motion, concluding that fees cannot be assessed under § 1930(a)(6) in Chapter 11 cases with liquidating plans that allocate all estate assets to creditors when the plans were confirmed and substantially consummated before § 1930(a)(6) was amended. It is from this decision and order of the bankruptcy court that the UST now appeals.

**DISCUSSION**

On review, the bankruptcy court's findings of fact are accepted unless they are clearly erroneous; its conclusions of law are reviewed de novo. *In re Kirkland,* 86 F.3d 172, 174 (10th Cir.1996).

Until January 1996, 28 U.S.C. § 1930(a)(6) provided in part that "a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until a plan is confirmed or the case is converted or dismissed, whichever occurs first." On January 26, 1996, Congress amended the statute to provide in part that "a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any faction thereof) until the case is converted or dismissed, whichever occurs first." Balanced Budget Downpayment Act, I, Pub.L. No. 104–99, § 211, 110 Stat. 26, 37–38 (1996). In so amending § 1930(a)(6), Congress eliminated plan confirmation as an event that would end payment of quarterly fees. On September 30, 1996, Congress emphasized its intent regarding the scope of § 1930(a)(6), as amended, by enacting a clarifying amendment which provided that the post-confirmation fee "shall accrue and be payable from and after January 27, 1996, in all cases (in-

cluding, without limitation, any cases pending as of that date), regardless of confirmation status of their plans." Pub.L. No. 104–208, 110 Stat. 3009 (1996).

*The Reach of § 1930(a)(6)*

■ The bankruptcy court held that under *Landgraf v. USI Film Prods.,* 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), assessment of quarterly fees on the debtors constituted an impermissible retroactive application of 1930(a)(6). *In re CF&I Fabricators, Inc.,* 199 B.R. 986, 999 (Bankr.D.Utah, 1996). The bankruptcy court correctly noted that "[u]nder *Landgraf,* the first test in determining if a statute is retroactive is whether the text of the statute manifests an intent that it should be applied to cases in existence at the time of enactment and if Congress has expressly prescribed its proper reach." *Id.* at 996. The bankruptcy court found no clear expression by Congress that it intended the statute to apply to pending cases with confirmed plans. *Id.* The bankruptcy court's order, however, was entered before Congress passed the clarifying amendment. The clarifying amendment leaves no doubt, if there was any before, that Congress intended that § 1930(a)(6) apply to all pending Chapter 11 cases, including those with plans confirmed prior to the effective date of the statute.

The legislative history of the January 26, 1996 amendment also evinces Congress' intent that § 1930(a)(6) reach all chapter 11 cases, including those with confirmed plans. The Joint Explanatory Statement of House of Representatives Conference Report reads:

> In addition, under section 111, the conferees agree to include an extension of post-confirmation quarterly fee payments made under Chapter 11 as proposed in both the House and Senate bills and expect that these fees will apply to all pending Chapter 11 cases with confirmed reorganization plans.

H.R.Conf.Rep. No. 104–378, 141 Cong. Rec. H13894 (1995).

In light of this legislative history, there can be no doubt as to the clear intent of Congress that the amended statute applies to confirmed plans such as the debtors'. Accordingly, the court need not resort to "judi-

cial default" rules in determining the statute's reach. *Landgraf,* 511 U.S. at 280, 114 S.Ct. at 1505.

■ The bankruptcy court construed the language of § 1930(a)(6), as amended, to mean that the obligation to pay post-confirmation fees arises only at the time a case is converted or dismissed and that no obligation arises in cases that are successfully closed. *In re CF&I,* 199 B.R. at 993–95. The UST argues that the amended statute requires that post-confirmation quarterly fees be paid not only in those cases which are converted or dismissed, but also in cases in which a final decree is entered. The UST further contends that there is a continuing obligation to pay quarterly fees in all open Chapter 11 cases. The court agrees. The language of the statute makes clear that the fee obligation arises when the Chapter 11 case is commenced and must be paid on an ongoing, quarterly basis. The obligation to pay the fees ends only when the case is converted, dismissed, or successfully terminated.

*Modification of the Plan*

■ The bankruptcy court found that the UST, by collecting post-confirmation fees from the debtors, was attempting to modify the plan in contravention of Section 1127 of the Bankruptcy Code. *Id.* at 991. Section 1127(b) of the Bankruptcy Code provides that "[t]he proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan."

The UST agrees that since only the proponent and the reorganized debtors may modify the plan, and since it is undisputed that the plan is substantially consummated, the plan may not now be modified. However, according to the UST, it is not attempting to modify the plan but rather, is seeking to collect a post-confirmation obligation of the debtor. Again, the court agrees with the UST. The fees that the debtors must pay are "administrative expense[s] attendant to an open case." *In re McLean Square Associates,* 201 B.R. 436, 441 (Bankr.E.D.Va.1996) (holding that application of § 1930(a)(6) to a plan confirmed before the amendment was not a modification of the plan).

■ Similarly, 11 U.S.C. § 1141 does not preclude the UST from collecting post-confirmation fees from the debtors. Subsection (a) of § 1141 states that "the provisions of a confirmed plan bind . . . any creditor" whether or not the creditor has accepted the plan. Here, this restriction does not apply because the UST is not seeking to assess fees that arose before confirmation of the plan. *See Holywell Corp. v. Smith,* 503 U.S. 47, 58, 112 S.Ct. 1021, 1028, 117 L.Ed.2d 196 (1992) ("Even if § 1141(a) binds creditors of the corporate and individual debtors with respect to claims that arose before confirmation, we do not see how it can bind the United States or any other creditor with respect to postconfirmation claims").

*Constitutionality of the Amendment*

Requiring the debtors to pay post-confirmation fees neither amounts to an unconstitutional taking in violation of the Fifth Amendment nor violates the Constitution's separation of powers.

■ The debtors have no property interest that can be protected by the Fifth Amendment. While confirmation of the plan established the relative rights of the debtors and their creditors, this is not the type of vested right that can be considered "property" within the meaning of the Fifth Amendment. *See generally, Bowen v. Public Agencies Opposed to Social Sec. Entrapment,* 477 U.S. 41, 54–56, 106 S.Ct. 2390, 2397–98, 91 L.Ed.2d 35 (1986) (holding that amendment to Social Security Act that prevented States from terminating participation in Social Security System was not an unconstitutional taking because there existed no contractual rights rising to level of "property") and *In Re Prines,* 867 F.2d 478, 485 (8th Cir.1989) (rejecting argument that pre-amendment § 1930(a)(6) violated the Takings Clause because "[c]arried to its logical conclusion, debtors' argument would mean no increases in fees, taxes, or assessments could be applied to any bankruptcy case after filing, a proposition we are unable to accept." (internal citations omitted)).

**20**

The separation of powers principle is not violated by the imposition of post-confirmation fees. Debtors rely on *Plaut v. Spendthrift Farm*, 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995), in which the Supreme Court held that § 27A of the Securities Exchange Act of 1934, which required federal courts, under certain circumstances, to reopen final judgments, was unconstitutional. However, requiring a federal court to reopen final judgments, as Congress had attempted to do through § 27A, is far different from requiring a bankruptcy court to impose fees on cases with confirmed plans. Specifically, unlike the legislation at issue in *Plaut*, § 1930(a)(6), as amended, does not constitute an impermissible usurpation of the federal courts' exclusive power to decide cases.

IT IS ORDERED.