In re HUDSON OIL COMPANY, INC., Debtor.

UNITED STATES TRUSTEE, Appellant,

v.

HUDSON OIL COMPANY, INC., Appellee.

Civil Action No. 96–4161–KHV.

United States District Court,
D. Kansas.

June 30, 1997.

Mendel Small, Spencer, Fane, Britt & Browne, Kansas City, MO, Thomas M. Mullinix, Joanne B. Stutz, Evans & Mullinix, P.A., Lenexa, KS, for Hudson Oil Co., Inc., Hudson Refining Co., Inc., Hudson Van Oil of Kansas City, Inc., Hudson Realty Co., Inc., Hudson Stations, Inc., Hudson Van Oil of Florida, Hudson Oil Co. of California, Inc., Hudson Van Oil Co.

Richard A. Wieland, Office of the U.S. trustee, Wichita, KS, for U.S. Trustee.

Thomas M. Mullinix, Joanne B. Stutz, Evans & Mullinix, P.A., Lenexa, KS, for Unsecured Creditors' Committee.

F. Stannard Lentz, Lentz & Clark, P.A., Overland Park, KS, David R. Snodgrass, Gardere & Wynne, L.L.P., Dallas, TX, for Walter Kellogg.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

The debtor in this appeal, Hudson Oil Company, Inc. ("Hudson Oil") obtained confirmation of a Chapter 11 bankruptcy plan in 1990.[1] On June 6, 1996, the Unsecured Creditor's Committee (the "UCC") filed an application for Final Decree. The United States Trustee (the "UST") objected, claiming that Hudson Oil had failed to pay post-confirmation quarterly fees from January 27, 1996, until the date of the final decree, as required by an amendment to 28 U.S.C. § 1930(a)(6) on January 26, 1996. *See* § 211 Balanced Budget Downpayment Act, I, Pub.L. No. 104–99, 110 Stat. 26, 37–38 (Jan. 26, 1996).

The UST and the UCC ultimately agreed to entry of the Final Decree, with the bankruptcy court retaining jurisdiction over the statutory fee issue. On July 2, 1996, the UST filed a motion to compel payment of post-confirmation statutory fees. The bankruptcy court overruled that motion on August 27, 1996, finding that the Balanced Budget Downpayment Act, amending 28 U.S.C. § 1930(a)(6), "does not apply to cases in which a chapter 11 reorganization plan was confirmed before the effective date of that act." *See In re Hudson Oil Co., Inc.,* 200 B.R. 52, 56 (Bankr.D.Kan.1996). The UST appeals the denial of its motion to compel.

The UST argues that in September 1996— one month after the bankruptcy court's deci-

---

1. The debtor consists of eight separate companies whose individual Chapter 11 proceedings were consolidated into those of the remaining debtor, Hudson Oil. As part of the plan, the debtors' assets were consolidated into a trust for liquidation ("Hudson Liquidating Trust").

sion—Congress clarified its intent to impose post-confirmation quarterly fees in this case. *See* Omnibus Consolidated Appropriations Act, 1997, Pub.L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996). In response, Hudson Oil argues that (1) the plain language of 28 U.S.C. § 1930(a)(6), as amended, is not clear; (2) the bankruptcy court correctly determined that the statute, as amended, is impermissibly retroactive; (3) the amendment applies only to reorganization cases, not liquidating cases; (4) only the debtor, not the liquidating trust, can be held responsible for post-confirmation quarterly fees; (5) no rational basis exists for imposing post-confirmation quarterly fees; (6) imposing post-confirmation quarterly fees in a case with a previously confirmed plan violates the Separation of Powers doctrine; and (7) amended Section 1930(a)(6) modifies a "substantially consummated plan" as defined in the bankruptcy code and therefore enforcement of any such claim must be pursued outside the bankruptcy code in the same manner as any other post-confirmation creditor. Having considered the arguments of counsel, the Court reverses the order of the bankruptcy court and finds that Section 1930(a)(6), as amended, does apply to this case. The Court also remands for further proceedings not inconsistent with this decision.

### Standard of Review

On review, the bankruptcy court's findings of fact are accepted unless they are clearly erroneous; its conclusions of law are reviewed de novo. *In re Kirkland,* 86 F.3d 172, 174 (10th Cir.1996).

### Discussion

■ Until January 1996, Section 1930(a)(6) provided that "a quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) **until a plan is confirmed or the case is converted or dismissed, whichever occurs first.**" 28 U.S.C. § 1930(a)(6) (emphasis supplied). On January 26, 1996, Congress amended the statute to provide in part that "a quarterly fee shall be paid to the United States trustee, for

deposit in the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) **until the case is converted or dismissed, whichever occurs first.**" Balanced Budget Downpayment Act, I, Pub.L. No. 104–99, § 211, 110 Stat. 26, 37–38 (1996) (emphasis supplied). In so amending Section 1930(a)(6), Congress eliminated plan confirmation as an event that would end payment of quarterly fees.

Approximately one month after the bankruptcy court entered its order in this case, Congress clarified its intent regarding the scope of amended Section 1930(a)(6). On September 30, 1996, the President signed into law the Omnibus Consolidated Appropriations Act, 1997, Pub.L. No. 104–208, 110 Stat. 3009, which provides that the post-confirmation fees "shall accrue and be payable from and after January 27, 1996, **in all cases (including, without limitation, any cases pending as of that date), regardless of confirmation status of their plans.**" Pub.L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996) (emphasis supplied).

The bankruptcy court found that the January amendment to 28 U.S.C. § 1930(a)(6) "would be retroactive if it required quarterly fees to be paid in a chapter 11 case in which a plan was confirmed before the amendment's effective date, and that Congress did not clearly express its intent to do so." *In re Hudson Oil,* 200 B.R. at 54 (following *In re Precision Autocraft, Inc.,* 197 B.R. 901, 907 (Bankr.W.D.Wash.1996) *rev'd,* 207 B.R. 692 (W.D.Wash.1997)).

The United States Supreme Court established the following analysis to be applied where the application of a statute raises retroactivity concerns:

When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e.,* whether it would impair rights a party possessed when he acted, increase a par-

ty's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Landgraf v. USI Film Products,* 511 U.S. 244, 280, 114 S.Ct. 1483, 1505, 128 L.Ed.2d 229 (1994).

As the Supreme Court demonstrated in *Landgraf,* a court may determine congressional intent from the statutory text, by necessary implication from the statute taken as a whole, or from the statute's legislative history. *See id.* at 253–263, 114 S.Ct. at 1491–96. Here, the text of the clarifying amendment leaves little doubt (if any) that Congress intended the January 1996 amendment to 28 U.S.C. § 1930(a)(6) to apply to all pending Chapter 11 cases, including those with plans confirmed prior to the effective date of the amendment. *Accord In re Precision Autocraft, Inc.,* 207 B.R. 692, 694–95 (W.D.Wash.1997) *rev'g,* 197 B.R. 901 (Bankr. D.Wash.1996); *In re CF & I Fabricators,* Case No. 96–CV–920C at p. 4 (D.Utah Apr. 24, 1997) *rev'g,* 199 B.R. 986 (Bankr.D.Utah 1996).

Moreover, the legislative history of the January 1996 amendment also evinces Congress' intent that Section 1930(a)(6) reach all chapter 11 cases, including those with confirmed plans. The Joint Explanatory Statement of House of Representatives Conference Report provides in part:

> In addition, under Section 111, the conferees agree to include an extension of post-confirmation quarterly fee payments made under Chapter 11 as proposed in both the House and Senate bills and expect that these fees will apply to all pending chapter 11 cases with confirmed reorganization plans.

H.R. Conf. Rep. No. 104–378 (Dec. 1, 1995). The Conference Report also includes the following comment with respect to Section 111:

Sec. 111. —The conference agreement includes section 111 as proposed in the House and Senate bills, which extends the quarterly fee payments for debtors under chapter 11 of the Bankruptcy Code to include the period from when a reorganization plan is confirmed by the Bankruptcy Court until the case is converted or dismissed. The conferees intend that this fee will apply to both pending and new cases.

*Id.*[2]

In light of this legislative history and the September 30, 1996 clarifying amendment, the Court finds that Congress clearly intended the January 1996 amendment to Section 1930(a)(6) to apply to cases with previously confirmed plans. *Accord, In re Precision Autocraft,* 207 B.R. at 694–95; *In re CR & I Fabricators,* Case No. 96–CV–920C at p. 4 (D.Utah Apr. 24, 1997); *In re Huff,* 207 B.R. 539, 542 (Bankr.W.D.Mich.1997); *In re Lancy,* 208 B.R. 481, 482 (Bankr.D.Ariz.1997); *In re Betwell Oil & Gas Co.,* 204 B.R. 817, 818 (Bankr.S.D.Fla.1997); *In re Uncle Bud's Inc.,* 206 B.R. 889, 900 (Bankr.M.D.Tenn. 1997); *In re Central Florida Elec. Inc.,* 197 B.R. 380, 381 (Bankr.M.D.Fla.1996). The Court is not persuaded by Hudson Oil's argument that the amendment applies only to "reorganization" cases, and not to "liquidating" cases. Neither the clarifying amendment, nor the legislative history, draws such a distinction. Accordingly, we reverse the bankruptcy court's holding that Section 1930(a)(6), as amended, does not apply to a Chapter 11 case with a confirmed plan prior to the amendment's effective date.

■ The Court also rejects the argument that the obligation to pay quarterly fees under 28 U.S.C. § 1930(a)(6) is imposed only upon the debtor, and that the liquidating trust established under the confirmed plan has no responsibility for the fees imposed. The bankruptcy court considered and rejected this argument, and Hudson Oil did not

---

2. The Senate Report, issued by the Senate Committee on Appropriations, includes a similar statement: "As requested, the Committee recommendation includes an extension of the quarterly fee payments made under chapter 11 to include the period after a reorganization plan has been confirmed by the bankruptcy court until the case has been dismissed." S.Rep. No. 104–139, 104th Cong., 1st Sess. at 15 (Sept. 12, 1995).

appeal its ruling.[3]  If Hudson Oil wished to preserve this issue for appeal, it was required to file a notice of cross-appeal within ten days after the UST filed the notice perfecting this appeal.  Fed. Bank. Proc. 8002(a).  The timely filing of a notice of cross-appeal is jurisdictional and cannot be waived.  *See In re Ranch Partners, Ltd.,* 146 B.R. 833, 837 (D.Colo.1992); *In re Rozark Farms, Inc.,* 139 B.R. 463, 465 (E.D.Mo. 1992).  Because Hudson Oil did not file a timely notice of cross-appeal on this issue, we are without jurisdiction to consider it.

■ Hudson Oil also argues that retroactive application of post-confirmation quarterly fees is irrational.  Due process challenges to retroactive legislation affecting economic rights are subject to a rational basis test.  *See United States v. Carlton,* 512 U.S. 26, 30–31, 114 S.Ct. 2018, 2021–22, 129 L.Ed.2d 22 (1994).  The Court concludes that Congress enacted the amendment to Section 1930(a)(6) for a legitimate legislative purpose, furthered by rational means.  Congress established a self-funding structure for the United States Trustee Program based upon its finding that users of the bankruptcy system, not the general public, should be required to pay for it.  H.R.Rep. No. 764, 99th Cong., 2d Sess. 22, *reprinted in* 1986 U.S.Code Cong. & Admin.  News 5227, 5234; *see also In re Prines,* 867 F.2d 478, 480 (8th Cir.1989).  Congress designed the United States Trustee Program to be supported by a percentage of the filing fees paid to the bankruptcy court by all debtors under Chapters 7, 11, 12 and 13 of the bankruptcy code and by the quarterly fee payable to the UST in all Chapter 11 cases.  *See* 28 U.S.C. § 1930(a).  Congressional concern over declining quarterly fee revenues led Congress to adopt these changes and the corresponding fees rationally address this concern.[4]

■ The bankruptcy court, in dicta, opined that imposing post-confirmation quarterly fees in cases with confirmed plans might implicate a Separation of Powers concern.  *See In re Hudson Oil,* 200 B.R. at 56 (citing *Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995)).  *Plaut* held that Congress violated this doctrine by requiring that private civil actions brought under Section 10(b) of the Securities and Exchange Act of 1934 be re-

3. In rejecting this argument, the bankruptcy court reasoned as follows:

> The UCC contends this new obligation is imposed on debtors, and the Hudson Liquidating Trust does not owe the fees because it is separate and distinct from the consolidated debtors.  A review of the provisions of the agreement which established the trust reveals the trust is a liquidating and disbursing agent for the debtors, and would have to pay the fees if they apply to the debtors.  The trust is to pay taxes assessed against the debtors based on income from the trust assets, the trust is not a taxable entity and the debtors will be taxed on capital gains and income which the trust might realize, the trustee of the trust may be removed only by an order approved by the bankruptcy court, the trustee may abandon trust assets to the debtors if certain conditions are met, and the trust agreement may be modified, terminated, or revoked only by a bankruptcy court order.  Clearly the trust is not independent of the debtors and is subject to continuing bankruptcy court supervision.  If the debtors are liable for the new quarterly fees, the trustee will be, too.

> *See In re Hudson Oil,* 200 B.R. at 53 (citations to plan omitted).

4. As explained in the initial House Report from the Committee on Appropriations, Congress expressly considered the need for a statutory fee adjustment as follows:

> Decline in Bankruptcy filings—The recommendation [to increase the U.S. Trustee's fees] assumes an overall decline in bankruptcy filings in 1996, as assumed in the budget, but reduces the amount of funding to correspond to this decline, which was not reflected in the budget request.  The Committee understands that due to this decline, Chapter 11 filing fees which partially finance this program are anticipated to drop significantly.  However, because cases with assets to administer often take two to three years, the pending caseload still in progress will require ongoing attention.  The Committee recommendation includes an extension of the quarterly fee payments made under Chapter 11 to include the period after a reorganization plan has been confirmed by the Bankruptcy Court until the case has been dismissed (i.e., the post-confirmation period).  Presently, quarterly fees are collected only until the plan of reorganization in the case is confirmed by the court.

> H.R.Rep. No. 104–196, 104th Cong., 1st Sess. at 16–17 (1995).  *See also In re Central Florida Elec.,* 197 B.R. at 381–82 (application Section 1930(a)(6) from amendment's effective date to the entry of the final decree not constitutionally infirm).

opened after final judgment had been entered on statute of limitations grounds. *See Plaut*, 514 U.S. at 217–18, 115 S.Ct. at 1452.

*Plaut*, however, expressly limited its holding to legislation which reopened unappealed final judgments. The Supreme Court explained, "Congress can always revise the judgments of Article III courts in one sense: When a new law makes clear that it is retroactive, an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted, and must alter the outcome accordingly." *Id.* at 226, 115 S.Ct. at 1457. The present case falls within this rule, and the Court agrees with the district court's holding in *CF & I Fabricators* that Section 1930(a)(6), as amended, "does not constitute an impermissible usurpation of the federal courts' exclusive power to decide cases." *See In re CF & I Fabricators*, Case No. 96–CV–920C at p. 7 (D.Utah Apr. 24, 1997).

■ Finally, Hudson Oil argues that even if the Court finds a clear intent by Congress to apply amended Section 1930(a)(6) to cases with previously confirmed plans, the Court should not impose fees in this particular case. It argues that the amendment conflicts with the bankruptcy code because it seeks to modify a substantially consummated confirmed plan. Accordingly, it claims that the UST must pursue enforcement of any post-confirmation claim in the same manner as any other post-confirmation creditor, *i.e.,* outside the provisions of the bankruptcy code.

Section 1127(b) of the Bankruptcy Code governs the procedure for modifying a con-

firmed plan. It specifies that only the plan proponent or the reorganized debtor may do so, and then only before the plan has been substantially consummated. 11 U.S.C. § 1127(b). The Bankruptcy Court recognized a conflict between Section 1127(b) and the UST's position, concluding that, "[i]n effect, the Trustee is seeking to modify the confirmed plan even though § 1127(b) says only the plan proponent or reorganized debtor may modify a plan after confirmation, and then only before substantial consummation, which undoubtedly occurred long ago in this case." *See In re Hudson Oil*, 200 B.R. at 54; *accord In re Gryphon*, 204 B.R. 460, 463–65 (Bankr.W.D.Pa.1997); *In re Lancy*, 208 B.R. at 486–87.

It is uncontroverted that the plan in this case is substantially consummated. The UST argues, however, that imposing post-confirmation quarterly fees does not amount to a modification of the plan. *Cf. In re CF & I Fabricators* Case No. 96–CV–920C at p. 6 (D.Utah Apr. 24, 1997) (additional quarterly fees is administrative expense attendant to an open case); *In re McLean Square Assocs.*, 201 B.R. 436, 441 (Bankr.E.D.Va.1996) (same). On the other hand, Hudson Oil argues that allowing the UST a post-confirmation fee in this case would materially alter the terms of the plan, as well as materially impair creditors' rights.[5]

The parties have not provided the Court a copy of the plan, nor have they indicated the amount of fees which are at issue under the sliding disbursement scale set forth in Section 1930(a)(6).[6] Accordingly, we cannot de-

---

5. Hudson Oil asserts that all of the assets in this case have either been liquidated or transferred into the liquidating trust, specifically earmarked for creditors. It claims that the value of the assets in the trust is less than the amount of the debt owed to trust beneficiaries. The bankruptcy court's order, however, indicates that the Hudson Liquidating Trust is "unusual" because the trust is still operating some gas stations while it tries to sell them "which might supply money to pay the UST fees." *See In re Hudson Oil*, 200 B.R. at 54.

6. The statute provides:
   The fee shall be $250 for each quarter in which disbursements total less than $15,000; $500 for each quarter in which disbursements total $15,000 or more but less that $75,000; $750

for each quarter in which disbursements total $75,000 or more but less than $150,000; $1,250 for each quarter in which disbursements total $150,000 or more but less than $225,000; $1,500 for each quarter in which disbursements total $225,000 or more but less than $300,000; $3,750 for each quarter in which disbursements total $300,000 or more but less than $1,000,000; $5,000 for each quarter in which disbursements total $1,000,000 or more but less than $2,000,000; $7,500 for each quarter in which disbursements total $2,000,000 or more but less than $3,000,000; $8,000 for each quarter in which disbursements total $3,000,000 or more but less than $5,000,000; $10,000 for each quarter in which disbursements total $5,000,000 or more.
See 28 U.S.C. § 1930(a)(6).

termine whether post-confirmation fees would modify the confirmed plan in this case. We therefore remand this matter to the bankruptcy court for further findings and proceedings not inconsistent with this order. We specifically remand for a determination of (1) whether any "disbursements" were made during the applicable time period and, if so, the amount due under the sliding statutory scale, *supra;* and (2) whether imposing the applicable fee amounts to a modification of the confirmed plan in this case.

**IT IS THEREFORE ORDERED** that the Order of bankruptcy court dated August 27, 1996, be and hereby is **REVERSED** and the case is **REMANDED** to the United States Bankruptcy Court For The District Of Kansas.