**In re MUNFORD, INC. formerly d/b/a Majik Market, Debtor.**

**Bankruptcy No. A90–00078–SWC.**

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Dec. 11, 1997.

914

Heidi A. Feinman, Office of U.S. Trustee, Atlanta, GA, for Trustee.

Michael D. Langford, Kilpatrick Stockton, Atlanta, GA, for Debtor.

Angelyn M. Wright, Long, Aldridge & Norman, Atlanta, GA, for Creditors' Committee.

## *ORDER*

STACEY W. COTTON, Chief Judge.

Before the court is the United States Trustee's "Motion for Order Directing Debtor to Pay Fees" filed June 9, 1997. Trustee seeks payment of quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) from and after January 27, 1996. Debtor filed its voluntary Chapter 11 case on January 2, 1990. By order of August 30, 1993, the court confirmed Debtor's amended plan of liquidation (sometimes referred to as "the plan" or "Debtor's

plan"). To date, there has been no report of substantial confirmation or application for final decree. Separate objections to the present motion have been filed by Debtor and the Unsecured Creditors' Committee ("the Committee"). Upon review of the motion, briefs, supporting documents and oral arguments of counsel, the court finds and concludes the following:

## DISCUSSION

Debtor and the Committee assert that this court lacks jurisdiction because jurisdiction of the bankruptcy court after confirmation of a Chapter 11 plan is "normally limited 'to matters concerning the implementation or execution of a confirmed plan.' " (Debtor's Objection at 2, citing, In re Allegheny International, Inc., 954 F.2d 167, 169, n. 1 (3d Cir.1992); see also, In re Lancy, 208 B.R. 481 (Bankr.D.Ariz.1997); Zahn Associates, Inc. v. Leeds Building Products, Inc. (Matter of Leeds Building Products, Inc.), 160 B.R. 689, 691 (Bankr.N.D.Ga.1993) (Drake, J.)). Debtor also asserts that jurisdiction must be expressly reserved over matters not implicating the confirmed plan. Citing, Gryphon at the Stone Mansion, Inc. v. U.S. Trustee (In re Gryphon at the Stone Mansion, Inc.), 204 B.R. 460, 462 (Bankr.W.D.Pa. 1997). The court disagrees.

■ The district court in this district has referred "all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to this court pursuant to the General Order of Reference, (N.D.Ga. July 12, 1984), LR 83.7, NDGa. and BLR 1070, NDGa. See, 28 U.S.C. §§ 157(a) and 1334(a)(b). The Eleventh Circuit, following the Third Circuit's test in Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir.1984), has held that: "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." Miller v. Kemira, Inc. (In

re Lemco Gypsum, Inc.), 910 F.2d 784, 788 (11th Cir.1990). Clearly, the determination of the issue before the court will alter Debtor's rights and liabilities. Further, while the court agrees that after the confirmation order is entered, it "no longer acts in loco parentis over any and all squabbles and disputes that may arise in the affairs of the reorganized debtor," Matter of Leeds Building Products, Inc., 160 B.R. at 691, enforcing the provisions of the United States Code is certainly within its jurisdiction.

■ Moreover, Section XIV of Debtor's First Amended Plan of Liquidation captioned "RETENTION OF JURISDICTION" appears to expressly reserve jurisdiction over the subject matter of this dispute. Specifically, that section provides: "After entry of the Confirmation Order and until the Chapter 11 Case is closed by order of the Bankruptcy Court, the Bankruptcy Court ... shall retain exclusive jurisdiction of all matters arising under, arising out of, or relating to this Chapter 11 Case...." (Debtor's Exh. 1 at 28) Debtor's Chapter 11 case remains open.

The plan also provides a nonexclusive list of eleven (11) specific reservations of jurisdiction. Several of these arguably apply to the present proceeding including, "(b) the allowance or disallowance of any Claim, or any compromise and settlement thereof;" and "(c) The determination of the validity, priority, and extent of any Claim." (Debtor's Exh. 1 at 28). This nonexclusive list obviously encompasses postconfirmation jurisdictional retention.[1] Regardless, the present matter is sufficiently related to this Debtor's case to fall within Section XIV of the plan. Based upon the foregoing, the court concludes that it has jurisdiction to consider and determine Trustee's motion.

On January 26, 1996, Section 1930(a)(6) of Title 28, United States Code, was amended by § 211 of the Balanced Budget Down payment Act, Pub.L. 104–99, 110 Stat. 26, 37–38 (1996). The amendment struck the phrase

---

1. The plan of liquidation would only become effective upon the entry of an order of confirmation. Thus, the nonexclusive list provided in the plan could only apply to postconfirmation matters. It appears clear that Debtor envisioned postconfirmation disputes such as the present and expressly provided in the plan that this court retain jurisdiction over such matters.

"a plan is confirmed or" from § 1930(a)(6), leaving that section to read, in part,

> (6) In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit into the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until the case is converted or dismissed, whichever occurs first.... [2]

The statute's reach was further clarified by Title I, § 109(d) of the Omnibus Consolidated Appropriations Act, Pub.L. 104–208, 110 Stat. 3009 (September 30, 1996). Section 109(d) of Public Law 104–208 provides, in part:

> Section 101(a) of Public Law 104–91, as amended by section 211 of Public Law 104–99, is further amended by inserting ": Provided further, That, notwithstanding any other provision of law, the fees under 28 U.S.C. § 1930(a)(6) shall accrue and be payable from and after January 27, 1996, in all cases (including, without limitation, any cases pending as of that date), regardless of confirmation status of their plans" after "enacted into law."

The plain language of these provisions clearly permits the imposition of fees, after January 26, 1996, pursuant to 28 U.S.C. § 1930(a)(6) regardless of the status of Debtor's plan.

In *Landgraf v. USI Film Products,* 511 U.S. 244, 269, 114 S.Ct. 1483, 1499, 128 L.Ed.2d 229 (1994), the Supreme Court held:

> A statute does not operate "retrospectively" merely because it is applied in a case arising from conduct antedating the statute's enactment, [citation omitted], or upsets expectations based in prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment.

In enacting Public Law 104–208, Congress clearly set forth in the statute its intent plain language that the fees provided for in amended § 1930(a)(6) apply to all pending Chapter 11 cases regardless of the confirmation status of the plans.

■ The overwhelming majority of courts have concluded that the amended statute is not impermissibly retroactive because the amended statute expressly prescribes the statute's reach in that the fees apply only for the period after the effective date of the statute. *See, In re Hudson Oil Co., Inc.,* 210 B.R. 380 (D.Kan.1997) (reversing Bankruptcy Court decision reported at 200 B.R. 52); *In re Precision Autocraft, Inc.,* 207 B.R. 692 (W.D.Wash.1997) (reversing Bankruptcy Court decision reported at 197 B.R. 901); *In re McLean Square Assocs., G.P.,* 201 B.R. 436 (Bankr.E.D.Va.1996); *In re Foxcroft Square Co.,* 198 B.R. 99 (Bankr.E.D.Pa.1996); *Matter of Upton Printing,* 197 B.R. 616 (Bankr.E.D.La.1996); *In re Central Florida Elec., Inc.,* 197 B.R. 380 (Bankr.M.D.Fla. 1996); *but see, In re Burk Development Co., Inc.,* 205 B.R. 778 (Bankr.M.D.La.1997) (holding that statute lacked "unambiguous directive" as to its temporal scope and was therefore impermissibly retroactive). The court agrees with the majority that the amended statute is not impermissibly retroactive. *Landgraf,* 511 U.S. at 280, 114 S.Ct. at 1505.

■ However, even if the court concluded the contrary, the amended statute satisfies a legitimate legislative purpose supported by a rational means, and must be enforced. *U.S. v. Carlton,* 512 U.S. 26, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994). The amendment supports the policies of oversight and self-funding of the administration of bankruptcy cases.[3] *Upton Printing,* 197 B.R. at 620,

---

**2.** Prior to the amendment, 28 U.S.C.1930(a)(6) provided, in part,

> (6) In addition to the filing fee paid to the clerk, a quarterly fee shall be paid to the United States trustee, for deposit into the Treasury, in each case under chapter 11 of title 11 for each quarter (including any fraction thereof) until **a plan is confirmed or** the case is converted or dismissed, whichever occurs first.... *(emphasis added).*

**3.** In addition to the often cited legislative purpose of self-funding Chapter 11 cases, an equally important purpose motivating this legislation was the need for oversight by the United States Trustee after the plan's confirmation. It is the duty of the trustee to effect an efficient and speedy closure to a debtor's case. Without this oversight, some debtors had shown an unwillingness to perform what it perceived as "nonessential" obligations under the plan, never fully working in good faith to close their cases. This

*citing, In re Prines,* 867 F.2d 478 (8th Cir. 1989); H.R.Rep. No. 104–196, 104th Cong., 1st Sess. (1995). Thus, amended § 1930 is a rational means to satisfy this legitimate legislative purpose and must be enforced by this court.

■ Both Debtor and the Committee contend that allowing postconfirmation quarterly fees would effectuate a modification of the confirmed plan in contravention of 11 U.S.C. § 1127(b). *See, In re Uncle Bud's, Inc.,* 206 B.R. 889 (Bankr.M.D.Tenn.1997). They assert that because the plan was confirmed and substantially consummated several years ago, such modification is not permissible. Citing, 11 U.S.C. § 1127(b); *In re Gryphon at the Stone Mansion,* 204 B.R. at 463. More specifically, Debtor contends that the order of confirmation contains an express finding that "all fees payable under 28 U.S.C. Section 1930 have been paid." (Debtor's Exh. 3 at 9).

The plan was confirmed by order entered August 30, 1993, more than two years before the amendment to § 1930(a)(6) became effective. Obviously the plan did not address and the court did not consider future amendments to the statute when entering the confirmation order. At that time, all § 1930(a)(6) quarterly fees had been paid in accordance with the preamended statute. The amendment affects quarterly fees imposed by statutory amendment during the postconfirmation period; this was not addressed by the plan. Since postconfirmation fees and charges, by definition, could not be payable prior to the entry of the confirmation order, the amended statute does not conflict with or require the reopening of the confirmation order. *Cf., In re CF&I Fabricators of Utah,* 214 B.R. 16, 19–20 (D.Utah 1997)(amended § 1930(a)(6) does not constitute an impermissible usurpation of the federal courts' exclusive power to decide cases); *In re Hudson Oil Co., Inc.,* 210 B.R. at 385 (*citing In re CF&I Fabricators* ).

Moreover, Section II of Debtor's plan defines "administrative claim" to include "all

fees and charges assessed against the Estate pursuant to Section 1930, Title 28, United States Code." (Debtor's Exh. 1 at 1(1)). The plan does not clearly specify that such fees are limited to those assessed preconfirmation. It is plausible to interpret that definition to include fees assessed postconfirmation. An argument could also be made that the definition limits such fees to those assessed preconfirmation because such fees must be assessed against the estate, which ceases to exist upon a plan's confirmation. However, the plan defines "Estate" as "the estate created in this Chapter 11 Case pursuant to Section 541 of the Bankruptcy Code." (Debtor's Exh. 1 at 4(33)). Debtor proposed a plan of liquidation in which it dedicated the "estate" assets to the satisfaction of the plan. The court finds that a reasonable interpretation of the plan's definition section includes all assets devoted to the plan. Therefore, the court concludes that the confirmation order in no way limits its authority to order the payment of postconfirmation quarterly fees pursuant to amended 28 U.S.C. 1930(a)(6).

Also the court does not agree with those cases which hold that a debtor's obligations under § 1930(a)(6) cease when a plan is substantially consummated. *See e.g., In re Lancy,* 208 B.R. at 486; *In re Hudson Oil., Inc.,* 200 B.R. 52 (Bankr.D.Kan.1996), reversed, 210 B.R. 380 (D.Kan.1997); *In re CF&I Fabricators of Utah, Inc.,* 199 B.R. 986 (Bankr. D.Utah 1996), reversed, 214 B.R. 16, 1997 WL 476658 (D.Utah Apr. 24, 1997). The court also cannot agree with *In re Beechknoll Nursing Homes, Inc.,* 206 B.R. 886 (Bankr. S.D.Ohio 1997), which reached a somewhat similar result. Addressing whether a debtor's obligation to pay quarterly fees terminated upon full administration of the case, substantial consummation of the plan or some other "event," the Bankruptcy Court posited that "administrative fees paid by a party should bear some relationship to the administration of the case." *Id.* at 888. Accordingly, the court concluded that debtors should cease paying quarterly fees when the

purpose appears to conflict with the argument that upon confirmation no estate exists and therefore only minimum quarterly fees should be assessed. The court believes that the trustee serves an invaluable service to the vast numbers of unsecured creditors and the courts by overseeing performance under the plan and the efficient closing of Chapter 11 cases.

United States Trustee's services are "no longer necessary." *Id.*

In *In re Burk Development Co.,* 205 B.R. at 785, the court provided:

> The Amendment plainly states that the requirement of the fee being paid is that it be paid "in each case under chapter 11 of title 11...." The logical inference from the word "case is that the fee be paid in a pending case, that is, "in each case [pending] under chapter 11 of title 11...." (Simply put, there is no case in which a postconfirmation quarterly fee can be paid unless the case is pending). Once a final decree is issued and the "case" is closed, there is no longer a "case" in which a fee can be paid—so the triggering event for terminating postconfirmation quarterly fees, if a case is not dismissed or converted, must be the order closing the case, after the issuance of a final decree.

*See also, In re Sedro–Woolley Lumber Co., Inc.,* 209 B.R. 987, 990 (Bankr.W.D.Wash. 1997); *In re Junior Food Mart of Arkansas, Inc.,* 201 B.R. 522, 524 at n. 2 (Bankr. E.D.Ark.1996) (stating in dicta that a logical construction of the amended statute would require payment of the quarterly fees until conversion, dismissal, or until entry of the final decree). The court agrees with *Burk.* No final decree has been entered in this debtor's Chapter 11 case; therefore, the case is pending. The fact that Debtor's plan is substantially consummated does nothing to alter the plain language requirements of § 1930(a)(6).

■ The remaining issue before the court is how should the quarterly fees be computed? Section 1930(a)(6) requires that quarterly fees be determined based upon the amount of "disbursements" made during each quarter. Neither the statute nor the Bankruptcy Code defines the term "disbursements."

Courts which have addressed this issue have split into three camps. The first group defines the term broadly.[4] In these cases, the courts define disbursements to include all disbursements of the reorganized debtor. Emphasizing that the legislative purpose behind mandating the payment of postconfirmation quarterly fees was to raise revenues, they held that any restrictions placed on the term would frustrate that purpose. *See, In re Corporate Business Products, Inc.,* 209 B.R. at 954; *In re P.J. Keating Co.,* 205 B.R. at 667.

A second group of cases defines "disbursements" narrowly, holding that postconfirmation quarterly fees are limited to the $250 minimum amount specified by the statute.[5] These courts cite the case of *St. Angelo v. Victoria Farms, Inc.,* 38 F.3d 1525, 1534 (9th Cir.1994), which defines "disbursements" as "all payments made by the bankruptcy estate." Reasoning that upon a plan's confirmation the bankruptcy estate ceases to exist, 11 U.S.C. § 1141(b), these courts conclude that there can be no "disbursements" made postconfirmation by the estate. *In re Maruko,* 206 B.R. at 230.

Finally, a third group of cases holds that postconfirmation quarterly fees should be computed upon "disbursements" made pursuant to the confirmed plan.[6] This group of cases attempts to harmonize the legislative purpose with the reorganized debtor's right to a "fresh start." The court agrees with this latter approach.

When a debtor files a case under Title 11, a bankruptcy estate is created. If successful, a plan is proposed and confirmed. The confirmed plan of reorganization proposes the method by which a debtor's claims and interests will be satisfied. Thus, payments made pursuant to a confirmed plan are in satisfaction of estate debts or interests. The funds

---

4. *See, In re Gates Community Chapel of Rochester, Inc.,* 212 B.R. 220 (Bankr.W.D.N.Y.1997); *In re Corporate Business Products, Inc.,* 209 B.R. 951 (Bankr.C.D.Cal.1997); *In re Sedro–Woolley Lumber Co., Inc., supra; In re P.J. Keating Co.,* 205 B.R. 663 (Bankr.D.Mass.1997).

5. *See, Walter Industries, Inc. v. U.S. Trustee (In re Hillsborough Holdings Corp.),* Adv. No. 96–1098, Case Nos. 89–9715–8P1 through 89–9746–8P1

and 90–11997–8P1, (Bankr.M.D.Fla. Aug. 28, 1997) (unreported); *In re Maruko Inc.,* 206 B.R. 225 (Bankr.S.D.Cal.1997); *In re Boulders on the River, Inc.,* 205 B.R. 948 (Bankr.D.Or.1997).

6. *See, In re Betwell Oil and Gas Co.,* 204 B.R. 817 (Bankr.S.D.Fla.1997); *In re Jamko, Inc.,* 207 B.R. 758 (Bankr.S.D.Fla.1996); *In re SeaEscape Cruises, Ltd.,* 201 B.R. 321 (Bankr.S.D.Fla.1996).

utilized are designated for that sole purpose regardless of the entity in whom the property right is vested. This is particularly true in plans of liquidation such as that presently before the court.

When there are no quarterly disbursements, the minimum $250 quarterly fee is the proper amount assessed.[7] In liquidation plans such may frequently be the case. However, in furtherance of the legislative purposes, and in adherence to the statute's plain language, the court concludes that a reasonable interpretation of the term "disbursements" includes postconfirmation payments made pursuant to a confirmed plan. Thus, the quarterly trustee fees are based upon the greater of the disbursements made pursuant to the plan or the $250 minimum fee. Therefore, the court concludes that Debtor must pay Trustee quarterly fees for the period commencing January 27, 1997, and continuing until the entry of a final decree.

For the foregoing reasons, the objections of Debtor and the Creditors' Committee are overruled. Accordingly, it is

**ORDERED** that Trustee's motion for payment of postconfirmation quarterly fees pursuant to 28 U.S.C. § 1930(a)(6) is **granted,** and Debtor shall pay to Trustee postconfirmation quarterly fees based upon the greater of the disbursements made pursuant to Debtor's confirmed plan of liquidation or the $250 minimum fee for the period commencing January 27, 1997, and continuing until the entry of a final decree.

**ORDERED** that the clerk shall serve a copy of this order upon Debtor, Debtor's counsel, counsel for the Unsecured Creditors' Committee, and the United States Trustee.

IT IS SO ORDERED.

---

**7.** A possible exception might occur where a confirmed plan has been fully consummated with all funds disbursed and where there remains no funds or source from which payment can be made.