In re Charles Levi **HARNESS** and Rhonda Gale Harness, Debtors.

United States Trustee, John E. **FOULSTON**, Appellant,

v.

Charles Levi **HARNESS** and Rhonda Gale Harness, Appellees.

Nos. 94–42048–11, 97–4054–RDR.

United States District Court, D. Kansas.

March 24, 1998.

164

Justice B. King, Fisher, Patterson, Sayler & Smith, Topeka, KS, for Charles L. Harness and Rhonda G. Harness.

Richard A. Wieland, Office of U.S. Trustee, Wichita, KS, for John E. Foulston, Trustee.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This is an appeal from an order by a United States Bankruptcy Judge denying the motion of the United States Trustee (UST) to compel the debtors to pay quarterly fees imposed by 28 U.S.C. § 1930(a)(6).

This is a Chapter 11 bankruptcy which the debtors filed on December 15, 1994. An order confirming the debtors' plan was entered on January 4, 1996. On July 19, 1996, the UST moved for an order to show cause why a final decree had not been filed and to order the payment of statutory fees. The debtors filed a motion for final decree on September 6, 1996.

The UST's motion was based upon 28 U.S.C. § 1930(a)(6) which, with the passage of the Balanced Budget Downpayment Act effective January 27, 1996, read:

> [A] quarterly fee shall be paid to the United States trustee, for deposit in the Treasury, in each case under chapter 11 of title 11 ... until the case is converted or dismissed, whichever occurs first.

The purpose of the change to § 1930(a)(6) was to increase the revenue to the United States Trustee Program from the users of the bankruptcy system. *In re Hudson Oil Company, Inc.*, 210 B.R. 380, 384 (D.Kan. 1997) (discussing legislative history).

Prior to the passage of this statute, the payment of quarterly fees terminated upon confirmation of a plan. The amendment to the statute eliminated confirmation of the plan as an ending to the payment of quarterly fees. Therefore, the UST argued that post-confirmation quarterly fees were owing.

To clarify the application of the change implemented by the Balanced Budget Downpayment Act, on September 30, 1996 Congress passed a provision in Public Law 104–208 which stated that debtors must pay quarterly fees "from and after January 27, 1996, in all cases (including, without limitation, any cases pending as of that date), regardless of the confirmation status of their plans ..." The Omnibus Consolidated Appropriations Act of 1997, Pub.L. 104–208, § 109(d), 110 Stat. 3009, 3009–19 (1997).

The bankruptcy judge acknowledged the intent of Congress but determined that the statute as drafted left insuperable difficulties in assessing and collecting the fees. First, the bankruptcy court held that the obligation to pay post-confirmation quarterly fees had no definable and inevitable stopping point. This in turn made it difficult or impossible for a debtor to pay all statutory fees by the effective date of the plan as required by 11 U.S.C. § 1129(a)(12). Second, the bankruptcy judge found that a "retroactive" application of the statute was impermissible because it upset "the finality of the order of confirmation and the parties' reliance on its finality." Finally, the bankruptcy judge held that the claim for fees violated two sections of the Bankruptcy Code: 11 U.S.C. § 1141, which limits creditors to receiving property as provided under the plan; and 11 U.S.C. § 1127(b), which permits modifications of the plan only by the proponent of the plan or the reorganized debtor.

■ On review, we must accept the bankruptcy court's factual findings unless they are clearly erroneous; its conclusions of law are subject to *de novo* review. *In re Kirkland,* 86 F.3d 172, 174 (10th Cir.1996). This appeal concerns issues of law exclusively.

■ This court shall reverse the holding of the bankruptcy court for the following reasons. First, we believe the statute may be reasonably construed to discern an inevitable and definable stopping point for the payment of quarterly fees. The statute states that fees shall be paid "in each case under chapter 11 of title 11 until the case is converted or dismissed ..." If a case is closed, we submit it is unreasonable to consider it a "case under chapter 11." We believe it is reasonable to read the statute as requiring quarterly fees to be paid in *pending* cases under chapter 11 and conversely unreasonable to construe the statute as applying to cases in which a final decree has been entered. See *In re A.H. Robins, Inc.,* 219 B.R. 145 (Bankr.E.D.Va. 1998); *In re Burk,* 205 B.R. 778, 784–85 (Bankr.M.D.La.1997); accord *Robiner v. Beechknoll Nursing Homes, Inc.,* 216 B.R. 925 (S.D.Ohio 1997); *In re Hudson Oil Co., Inc.,* 210 B.R. at 384–85; *In re Richardson Service Corp.,* 210 B.R. 332, 334 (Bankr.

W.D.Mo.1997); *In re Sedro–Woolley Lumber Co., Inc.,* 209 B.R. 987, 989 (Bankr. W.D.Wash.1997). Consequently, the court finds the statute may be construed as containing an inevitable and definable stopping point for the payment of post-confirmation quarterly fees.

■ We also reject the contention that requiring a payment of post-confirmation quarterly fees would make compliance with § 1129(a)(12) of the Code impossible. Section 1129(a)(12) requires as a condition of confirmation that:

> All fees payable under section 1930, as determined by the court at the hearing on confirmation of the plan, have been paid or the plan provides for the payment of all such fees on the effective date of the plan.

A post-confirmation quarterly fee is not a "payable" fee under § 1129(a)(12) since it is not payable at the time of confirmation. See *In re Munford, Inc.,* 216 B.R. 913 (Bankr. N.D.Ga.1997); *In re Maruko, Inc.,* 206 B.R. 225, 228 (Bankr.S.D.Cal.1997) *aff'd in part; rev'd in part on other grds,* 219 B.R. 567 (S.D.Cal.1998); but see *In re Salina Speedway, Inc.,* 210 B.R. 851, 856 (10th Cir. BAP 1997).

■ We join the growing consensus of courts since the September 1996 clarifying legislation to reject the claim that requiring the payment of post-confirmation quarterly fees is an impermissible retroactive application of the amendment to § 1930(a)(6). Many courts have determined that the amendment to the statute does not operate retroactively because it requires the payments of fees only from the date of its enactment forward. E.g., *In re Richardson Service Corporation,* 210 B.R. at 334; *In re Driggs,* 206 B.R. 787, 791 (Bankr.D.Md.1997); *In re McLean Square Assoc.,* 201 B.R. 436, 440–42 (Bankr.E.D.Va.1996). But, even if this was considered a retroactive operation, it would not be unconstitutional. Congress has expressly prescribed a retrospective temporal reach, and the statute is supported by a rational legislative purpose. Under these conditions, there is no constitutional violation. See, e.g., *In re Hudson Oil Co., Inc.,* 210 B.R. at 384; *In re A.H. Robins,* 219 B.R.

at 146–50; *In re Munford, Inc.*, 216 B.R. 913, 916–17; *In re Richardson Service Corp.*, 210 B.R. at 334.

■ The appellees make reference to *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 115 S.Ct. 1447, 131 L.Ed.2d 328 (1995). In *Plaut*, the Supreme Court held that it was unconstitutional for Congress to enact legislation requiring courts to reopen final unappealed judgments. We do not believe the *Plaut* holding applies to this case because a confirmation order or a substantially consummated plan is not a final unappealable judgment. *In re CF&I Fabricators*, 214 B.R. 16, 20 (D.Utah 1997); *In re Hudson Oil Company*, 210 B.R. at 384–85; *In re Richardson Service Corp.*, 210 B.R. at 335. In fact, language in *Plaut* has been cited in support of the appellant's position herein. E.g., *In re Precision Autocraft, Inc.*, 207 B.R. 692, 694 (W.D.Wash.1997). In *Plaut*, the Court stated: "When a new law makes clear that it is retroactive, an appellate court must apply that law in reviewing judgments still on appeal that were rendered before the law was enacted and must alter the outcome accordingly." 514 U.S. at 226, 115 S.Ct. at 1456–57.

■ Finally, the court acknowledges that requiring a payment of post-confirmation quarterly fees might be considered a violation of the provisions of § 1127(b) and § 1141 which protect a plan from modification.[1] However, to fulfill the intent of Congress and to harmonize the application of § 1930(a)(6) with these sections of the Code, the court believes that the quarterly fees should be considered post-confirmation administrative expenses not specifically addressed in the plan. Consequently, the payment of such expenses should not be considered a modification of the plan. See *In re CF&I Fabricators*, 214 B.R. at 19; *In re Munford, Inc.*, 216 B.R. 913, 916–17; *In re Maruko, Inc.*, 206 B.R. at 228; *In re McLean Square Associates*, 201 B.R. at 440; see also, *United States Trustee v. Gryphon at the Stone Mansion, Inc.*, 216 B.R. 764 (W.D.Pa.1997) quoting, *In*

*re Richardson Service Corp.*, 210 B.R. at 335 ("A confirmed plan cannot bind the United States as to statutory obligations arising after confirmation."); but see, *In re Salina Speedway, Inc.*, 210 B.R. at 855–56; *In re Hudson Oil Co.*, 210 B.R. at 385–86 (remanding case to determine whether allowing a post-confirmation fee would modify a substantially consummated plan); *In re Burk*, 205 B.R. at 796–99.

In conclusion, it is clearly evident that with the amendment to § 1930(a)(6) Congress intended to require the assessment of post-confirmation quarterly fees after January 27, 1996 to cases with plans which were confirmed prior to that date. The amendment is supported by a rational legislative purpose and is not unconstitutional. Accordingly, the amendment must be applied in this case. Therefore, the decision of the bankruptcy court is reversed and the case is remanded to the bankruptcy court for proceedings consistent herewith.

**IT IS SO ORDERED.**

---

1. Section 1127(b) provides: "The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan." Section 1141(a) provides: "[T]he provi- sions of a confirmed plan bind the debtor, ... any entity acquiring property under the plan, and any creditor ... under the plan and whether or not such creditor ... has accepted the plan."